This is an appeal from a summary judgment entered in favor of the defendant, Elbert Sanders.
Sanders is president, chairman of the board, and sole stockholder of Designex, Inc. This dispute arises from a contract between Sanders's corporation, Designex, and United Merchants and Manufacturers, Inc., hereinafter referred to as "United," for the design and manufacture by Designex of two pieces of equipment, a turret unwind assembly and a material handling assembly, at a total contract price of $135,000.00.
As agreed, three invoices were sent to United during production of the equipment for progress payments totaling $81,000.00. These invoices were paid in September, October, and November of 1984 on behalf of United by CC Leasing, a company lending money to United for purchase of large equipment. Due to an administrative error *Page 690 
by United in May of 1985, United sent CC Leasing, among other invoices due that month, those previously-paid invoices from Designex totaling $81,000.00. As a consequence thereof, one set of invoices, totaling $81,000.00, was paid twice. It was not until the end of July 1985, that United discovered the overpayment. However, by that time, Designex had deposited the check and filed a Chapter 11 U.S.C. § 301 bankruptcy petition.
Nettie Hughes, office and business manager for Designex, testified that she received the mistaken payment of $81,000.00 on May 22, 1985. Mr. Sanders was out of town that day, and did not return until May 27, 1985. Hughes testified that she followed her customary procedure of making out a deposit slip, stamping the back of the check "For Deposit Only to the Account of Designex, Inc.," and depositing the check in Designex's bank account.
Ms. Hughes testified that she could not remember whether she told Mr. Sanders about the $81,000.00 payment when he returned to the office. Normally, she said, she would sit down with Sanders at the end of the month and go over all of the checks that had been received in order to match them with each client's account sheet; however, May 1985 was an unusually hectic month at Designex due to its impending bankruptcy. With permission of the bankruptcy court, Designex's accountants cut off their books at midnight on May 21, 1985. Designex then filed a petition for Chapter 11 bankruptcy proceedings on May 22, 1985, the same day that the $81,000.00 payment from United was received and deposited by Ms. Hughes into the Designex corporate bank account.
Sanders denied any personal knowledge or suspicion of the $81,000.00 overpayment until the end of July 1985, when David Rubin, assistant general counsel for United, called and told him that United had just discovered the error. At that time, Sanders did not deny receiving the check; rather, he told Rubin that he would look into it and get back in touch with him.
Sanders testified that on the 20th of each month, under normal circumstances, he would receive a statement from Designex's accountants detailing the various receipts and payments of the corporation from the month before. When he received the financial record of May 1985 payments and receipts, it did not set out those monies paid and received from May 22 to May 31, 1985. Sanders testified that he called the Designex accountants to inform them that the record of the 10-day period at the end of May had been omitted from his statement, and they told him that the omission was deliberate because the accounting was cut off at midnight on May 21, 1985. The accountants told Sanders that the payments and receipts from May 22 to May 31, 1985, would appear in the year end summary to be printed in September.
United, in the capacity of an involuntary general creditor, filed an action in the bankruptcy court against Designex to recover the money that had been paid to it by mistake. In that proceeding, the bankruptcy court awarded United $53,367.00 for money mistakenly paid. The award was to be paid out under Designex's Chapter 11 plan. The bankruptcy court found against United on the conversion, fraud, and breach of contract claims.
About the same time that the action in bankruptcy court was filed against Designex, United filed this action in the Madison County Circuit Court against Sanders in his capacity as president, chairman of the board, and sole shareholder of Designex, alleging that Sanders had received and converted $81,000.00 belonging to United, to the use of Designex and to his own personal use. United also alleged as follows:
 "Defendant received said overpayment knowing it to be the property of Plaintiff, knowing that Designex, Inc. and Defendant were not entitled to said sum, and knowing said sum to have been paid mistakenly. In order to further deceive Plaintiff, Defendant failed to tell Plaintiff of this mistaken payment and, in fact, denied the sum had been received by Designex, Inc. or Defendant when confronted with the facts in July 1985. Defendant further concealed said $81,000 overpayment by sending out invoice 1089 *Page 691 
dated June 26, 1985, demanding payment in the amount of $25,133. Defendant has refused to return said sum."
On the eve of the circuit court trial, United amended its complaint to include two additional theories: money paid by mistake to Elbert Sanders, individually, and money paid by mistake to Elbert Sanders, chairman of the board, president, and sole shareholder of Designex, Inc.
Prior to trial, Sanders filed a motion to dismiss, alleging that he, as president, chairman of the board, and sole shareholder of Designex, had substantial identity with the corporation, and should be able to avail himself of the bankruptcy court judgment denying relief on theories of fraud, conversion, and breach of contract. In response thereto, United filed a motion for summary judgment alleging that if Sanders and Designex were in substantial identity, then Sanders should be collaterally estopped from denying liability under the money-mistakenly-paid theory of United's complaint. Both motions were denied.
At the close of United's case, Sanders and United each moved the trial court for a directed verdict. Sanders's motion was granted on all counts of United's complaint. This appeal followed.
Fletcher's Cyclopedia of Corporations § 1135, at 267-68, (1986) summarizes the general rule as to liability of directors and officers to third persons for torts as follows:
 "It is thoroughly well settled that a person is personally liable for all torts committed by him, consisting in misfeasance — as fraud, conversion, acts done negligently, etc. — notwithstanding he may have acted as the agent or under directions of another. And this is true to the full extent as to torts committed by the officers or agents of a corporation in the management of its affairs. The fact that the circumstances are such as to render the corporation liable is altogether immaterial. The person injured may hold either liable, and generally the injured person may hold both as joint tort-feasors. Corporate officers are liable for their torts, although committed when acting officially. In other words, corporate officers, charged in law with affirmative official responsibility in the management and control of the corporate business, cannot avoid personal liability for wrongs committed by claiming that they did not authorize and direct that which was done in the regular course of that business, with their knowledge and with their consent or approval, or such acquiescence on their part as warrants inferring such consent or approval. This rule does not depend on the same grounds as 'piercing the corporate veil,' that is, inadequate capitalization, use of the corporate form for fraudulent purposes, or failure to comply with the formalities of corporate organization. This principle is applicable to directors, officers, and agents of a corporation when funds entrusted to it have been converted, even though they were used for the benefit of the corporation and not the officers concerned. They are liable for their torts regardless of whether the corporation is liable. . . ."
An action for conversion will lie if there has been a wrongful exercise of dominion over property in exclusion or defiance of the plaintiff's rights and the plaintiff has an immediate right to possession of the property. Empiregas,Inc., of Gadsden v. Geary, 431 So.2d 1258 (Ala. 1983).
The evidence will not support a conversion action against Sanders. First, there is no evidence that Sanders ever handled the money in any manner. The $81,000.00 payment was received and deposited by Ms. Hughes into the Designex corporate account while Sanders was out of town. There is also no evidence that Sanders had any knowledge of the overpayment until Rubin's phone call in July prompted an investigation. Even if he did have knowledge of the overpayment, by the time the mistaken payment was received, Sanders was not at liberty to pay any creditors, voluntary or involuntary, without direction of the bankruptcy court (11 U.S.C. § 362). This conduct cannot be characterized as a wrongful exercise of dominion over property. *Page 692 
In addition, a long line of decisions holds that "trover lies for the conversion of 'ear marked' money or specific money capable of identification". Hunnicutt v. Higginbotham,138 Ala. 472, 475, 35 So. 469, 470 (1903) (quoting from 21 Enc.Pl. Prac., 1020, 1021); Lewis v. Fowler,479 So.2d 725 (Ala. 1985); Moody v. Keener, 7 Port. 218 (Ala. 1838); Humana of Alabama, Inc. v. Rice,380 So.2d 862 (Ala.Civ.App. 1979), cert. denied, 380 So.2d 864
(Ala. 1980). However, when a relationship of debtor-creditor exists absent any obligation to return the identical money, an action for conversion of the funds representing the indebtedness will not lie. Lewis v. Fowler,479 So.2d 725 (Ala. 1985). Accordingly, United's conversion claim against Sanders must fail.
Likewise, there is no of evidence to support the fraud claim. It is not entirely clear from reading United's complaint and brief on appeal whether United is basing its fraud claim on alleged misrepresentations or on suppressions of material fact or on fraudulent deceit.
Under Alabama law, in order to maintain any claim for fraud, it is essential that there be a material misrepresentation or a concealment of fact that is reasonably relied upon by the complaining party to his detriment. United States v.Burgreen, 591 F.2d 291 (5th Cir. 1979); Bowman v.McElrath Poultry Co., 468 So.2d 879 (Ala. 1985);American Pioneer Life Insurance Co. v. Sherrard,477 So.2d 287 (Ala. 1985).
United points to no misrepresentation or concealment on the part of Sanders which induced it to send the $81,000.00 overpayment to Designex. The evidence indisputably shows that the overpayment was solely an internal accounting mistake on the part of United. United was listed at Schedule B-3-6 "Executory Contracts under which Debtor Claims an Equity," in the bankruptcy petition, and was notified of the petition by the bankruptcy court. There is no evidence that Sanders induced United to send an $81,000.00 overpayment knowing that United would be able to recover that money, if at all, only under a bankruptcy plan. We find no error in the trial court's directing a verdict in favor of Sanders on this claim.
United also argues that Sanders is collaterally estopped from denying liability for the overpaid funds, because he is in "substantial identity" with Designex, which has been found liable to United in the bankruptcy court. Sanders should be bound individually by the judgment of the bankruptcy court holding Designex liable, argues United. This contention is based on Sanders's pretrial motion to dismiss in which he argued that he, as president, chairman of the board, and sole stockholder of Designex, and Designex are in "substantial identity" with each other. Accordingly, Sanders argued, United is precluded from asserting claims against him which sound in breach of contract, conversion, and fraud because of the collateral estoppel effect of the prior bankruptcy proceeding.
In Parklane Hosiery Co. v. Shore, 439 U.S. 322,99 S.Ct. 645, 58 L.Ed.2d 552 (1979), the United States Supreme Court held that the doctrine of res judicata operates to bar a suit involving parties or their privies that are the same as those in a prior suit that proceeded to judgment on the merits. The parties in both suits need not be identical, however, for the doctrine to apply. If the parties in the first action are "substantially identical" to the parties in the later action, that is, if a non-party's interests were adequately represented by a party in the original suit, or if a party to the original suit is so closely aligned to a non-party's interest as to be his virtual representative, then judgments can bind that person not party or privy to the original action. This principle has been adopted in Alabama. In Century 21 PreferredProperties, Inc. v. Alabama Real Estate Commission,401 So.2d 764 (Ala. 1981) the Court said:
 "Judgments can bind persons not party (or privy) to the litigation in question where the nonparties' interests were represented adequately by a party in the original suit. Southwest Airlines Co. v. Texas International Airlines, 546 F.2d 84, 94-95 (5th Cir. 1977). A person may be bound by a judgment even though not *Page 693 
a party to a suit if one of the parties to the suit is so closely aligned with his interests as to be virtual representative. Aerojet-General Corporation v. Askew, 511 F.2d 710, 719 (5th Cir. 1975). Moreover, if a party has 'a sufficient "laboring oar" in the conduct' of the litigation, then the principle of res judicata can be actuated. Montana v. U.S., 440 U.S. 147, 155, 99 S.Ct. 970, 974, 59 L.Ed.2d 210 (1979).
 "Appellants contend, and we agree, that the parties to the federal action and in the cause now before us were not identical. Applying the legal precedent to the facts heretofore set out, however, we find they were 'substantially identical,' that Plaintiffs' rights in this action were adequately represented in the federal litigation, and that identical parties in interest retained central control of the litigation in both forums. See Restatement (Second) of Judgments § 78, 78.1 and 88 (Tent.Draft Nos. 3 and 4, 1976, 1977).
 "In summary, our holding is that 1) both the federal and state claims arose from a common nucleus of operative fact; and 2) the parties to both causes were substantially identical. Therefore, Appellants' action in the circuit court is barred by the doctrine of res judicata."
We hold that Sanders, as president, chairman of the board, and sole stockholder of Designex, is in substantial identity with Designex. Accordingly, since the parties in this case and in the bankruptcy action are substantially identical, we hold that United's action against Sanders is barred by the doctrine of res judicata.
United's final contention on appeal is that the trial court erred in not allowing United's counsel to impeach his own witness, Nettie Hughes, by way of her prior deposition testimony.
In Pope Quint, Inc. v. Davis, 485 So.2d 1134
(Ala. 1986), this Court noted and approved of Dean Gamble's interpretation of Rule 32(a)(1), A.R.Civ.P., that "any party can use a deposition to impeach any witness at any time" as long as a proper foundation is laid and the proffered evidence relates to a material issue. C. Gamble, McElroy's AlabamaEvidence § 165.01(6) (3d ed. 1977).
After a thorough review of the record, we hold that no error was committed by the trial court. United's counsel was given wide latitude in his direct examination of Ms. Hughes, and once a proper predicate was laid by him, Ms. Hughes's prior deposition testimony was thoroughly explored.
Because we find no error, the judgment of the trial court is affirmed.
AFFIRMED.
JONES, ADAMS, HOUSTON and STEAGALL, JJ., concur.