[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 399 
This is an appeal by defendant-appellant, Daniel P. Kendall ("appellant"), from a decision of the Franklin County Court of Common Pleas which sustained a motion by plaintiffs-appellees, Central Benefits Mutual Insurance Company ("CBM") and Central Benefits Life Insurance Company ("CBL"), seeking a new trial against appellant. *Page 400 
Appellees initiated this action by alleging claims for breach of contract, conversion, breach of fiduciary duty, and violation of Ohio's Corrupt Practices Act against defendant-appellee RIS Administrators Agency, Inc. ("RIS"). Appellees later amended their complaint to include claims for conversion, breach of fiduciary duty, disregard of the corporate fiction, and violation of Ohio's Corrupt Practices Act against defendants-appellees Charles Aldrin and Alan Clement, and appellant. The individual defendants were, for the period in question, owners, officers, and employees of the corporate defendant RIS and its parent corporation.
The case was tried to a jury, and at the close of appellees' case the court granted appellant's motion for a directed verdict as to appellees' claims against him personally. At that time, the claims alleging violation of Ohio's Corrupt Practices Act were dismissed as to all defendants. The jury later rendered verdicts against the remaining defendants, as well as a verdict against appellees on RIS's counterclaim for breach of contract.
On June 8, 1992, the trial court issued an order sustaining appellees' motion for a new trial against appellant, finding that appellees had presented evidence from which reasonable minds could have found in favor of appellees on their claims against appellant for conversion, breach of fiduciary duty, and disregard of the corporate fiction, and that the court had thus erred in dismissing these claims as a matter of law at the close of appellees' case.
Appellant has timely appealed and brings the following assignments of error:
"First Assignment of Error:
"The trial court erred in sustaining Appellees' Motion for a New Trial because Appellees failed as matter of law to establish with sufficient evidence each fact indispensable to the right of each action alleged against Appellant.
"Second Assignment of Error:
"The trial court erred in sustaining Appellees' Motion for a New Trial based on jury verdict [sic] and the jury's responses to interrogatories."
The factual context of this case revolves around RIS's business as a third-party administrator for appellees' health and life insurance programs. The record reveals that RIS began marketing health insurance products to Wendy's franchises for appellee CBM's predecessor entity, Blue Cross of Central Ohio, Inc., in 1983. RIS would collect insurance premiums from franchisees and eventually transmit them to appellee CBM after deducting administration fees and a commission. The relationship between RIS and CBM was not governed by a written agreement, and the terms under which RIS was permitted to retain premiums collected before remitting them to CBM were a factual issue at trial. Early during the relationship between RIS and CBM, a pattern of late remittance *Page 401 
of collected premiums developed which caused the parties to negotiate a sixty-day deferral period in which RIS was to collect and remit premiums. CBM was compensated under the agreement for its lost investment income during the sixty-day deferral period. Payment delays by RIS continued, and in 1988 CBM imposed an additional lost investment factor to compensate CBM beyond the sixty-day deferral period.
Appellees at trial presented evidence that RIS had treated the collected premium funds as its own, and that the delays in remittance to CBM were due to use of the funds for allegedly unauthorized purposes, such as loans to officers, loans to sister corporations, and loans to RIS's parent corporation. These loans included a $45,000 loan to Charles Aldrin for the purchase of a Lotus automobile and a $39,000 loan to Gullwing Classics, Inc., a sister corporation formed for the purpose of marketing replicas of vintage Mercedes Benz automobiles. The uses to which the collected premiums were put by RIS during the deferral period before they were remitted to CBM gives rise to the central issue in this case of whether the agreement between CBM and RIS permitted such uses, and whether CBM was damaged by such alleged misuse of the collected premiums.
Relations between RIS and appellee CBL, unlike those with CBM, were governed by a written agreement entered into between the parties for administration of a life insurance component for RIS's insurance programs. This agreement explicitly required RIS to treat premium funds collected from franchisees as the property of CBL to be held in a fiduciary capacity. The course of late payment patterns for premiums remitted to CBL appears to have been identical to that for CBM, and in fact RIS appears to have commingled collected premiums without regard to their source.
Appellant testified that he first became associated with RIS as a consultant in the fall of 1983. Appellant participated in meetings between CBM and RIS as a representative of RIS during the time when the sixty-day deferral period was negotiated between the parties. Appellant became a full-time employee of RIS in July 1985, with the title of "Director of Operations." Appellant became acting president of RIS in July 1986, and on January 1, 1987 became an officer, director, and shareholder of The Capital Group, Inc., the parent corporation of RIS and its sister companies. Appellant at this time was confirmed as president of RIS, an office which he held until his formal resignation in March 1990. Appellant apparently gradually reduced his participation in RIS management beginning sometime in 1988 until his resignation, due to pressures caused by his wife's terminal illness.
The trial court initially granted a directed verdict in favor of appellant under Civ.R. 50(A)(4), which provides as follows: *Page 402 
"When a motion for a directed verdict has been properly made, and a trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
Therefore, in the present case, the trial court necessarily made an initial determination that appellees presented evidence such that reasonable minds could reach only a conclusion adverse to appellees with regard to their claims against appellant for conversion, breach of fiduciary duty, and disregard of the corporate fiction.
After the jury returned verdicts against the other defendants, and pursuant to appellees' motion, the court reversed its earlier decision granting a directed verdict in favor of appellant and awarded appellees a new trial pursuant to Civ.R. 59. Under Civ.R. 59(A)(9):
"* * * A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:
"* * *
"(9) error of law occurring at the trial and brought to the attention of the trial court by the party making the application."
Upon appeal from a trial court's grant of a Civ.R. 59 motion for a new trial, our review is limited to whether the trial court abused its discretion. Klever v. Reid Bros. Express, Inc.
(1951), 154 Ohio St. 491, 43 O.O. 429, 96 N.E.2d 781.
Appellant's first assignment of error alleges that appellees failed to present sufficient evidence to establish each element of the claims alleged, and that the trial court therefore did not err in granting a directed verdict for appellant, but rather erred in reversing itself and awarding a new trial.
This court has defined the tort of "conversion" as "any exercise of dominion or control wrongfully exerted over the personal property of another in denial or under a claim inconsistent with his rights." Ohio Tel. Equip. Sales, Inc. v.Hadler Realty Co. (1985), 24 Ohio App.3d 91, 93, 24 OBR 160, 162, 493 N.E.2d 289, 292. In this case, the evidence presented during appellees' case-in-chief was that the premium funds collected by RIS were held in a fiduciary capacity for appellees; that RIS, during appellant's tenure as president, employed those funds in a manner inconsistent with appellees' rights; and that appellant was in a position to direct, participate in, and benefit from the alleged conversion of the premium funds in which appellees held a beneficial interest. Appellees therefore set forth sufficient evidence to cause reasonable minds to *Page 403 
differ regarding each element of their claim for conversion against appellant. "When a corporate officer commits a tort while in the performance of his duties, he is individually liable for the wrongful act." Shaffer v. Frontrunner, Inc.
(1990), 57 Ohio App.3d 18, 22, 566 N.E.2d 193, 197, citingYoung v. Featherstone Motors, Inc. (1954), 97 Ohio App. 158,171, 55 O.O. 405, 411, 124 N.E.2d 158, 166. The trial court therefore did not err in awarding appellees a new trial on their conversion claim.
Appellees likewise presented sufficient evidence to support their claim that a fiduciary relationship was created between appellees and RIS, and that RIS breached its fiduciary duties. The written agreement between RIS and appellee CBL expressly refers to such a fiduciary relationship. Testimony by appellees' employees at trial, as well as the terms of written documents referring to the sixty-day deferral period and subsequent imposition of a lost-cost recovery factor for payments withheld for more than sixty days, could reasonably have supported a conclusion that a fiduciary duty also existed on the part of RIS towards appellee CBM. The same testimony which supports conversion through misuse of collected premiums could establish a breach of such a fiduciary duty. Appellees presented extensive testimony on the resulting loss to appellees due to the unauthorized retention of collected premiums by RIS, despite the imposition of lost-cost recovery factors by appellees in order to mitigate such loss.
Appellant, as a corporate officer and director, can be found personally liable for a tort committed by the corporation under his control, or with his participation or cooperation.Featherstone, op. cit. Appellees presented sufficient evidence by establishing appellant's position as president of RIS during the period in question, and by establishing his knowledge and approval, if only tacit, of the allegedly unauthorized use of collected premium funds. Such evidence, at the least, creates a jury question as to personal liability for breach of fiduciary duty. The trial court therefore did not err in awarding appellees a new trial on their claim for breach of fiduciary duty.
With regard to appellees' claim for breach of contract, appellees must pierce the corporate veil if they are to hold appellant personally liable for RIS's breach of its contracts with appellees. This court, in the case of Am. Hardware Supplyv. Alan Supply, Inc. (1989), 63 Ohio App.3d 838, 843,580 N.E.2d 473, 476, applied the test set forth in Bucyrus-Erie Co. v. Gen.Prod. Corp. (1981), 643 F.2d 413:
"* * * [T]he corporate fiction should be disregarded when: (1) domination and control with the corporation by those to be held liable is so complete that the corporation has no separate mind, will, or existence of its own; (2) that domination and control was used to commit fraud or wrong or other dishonest or unjust *Page 404 
acts; and (3) injury or unjust loss resulted to the plaintiff from such control and wrong * * *." Id. at 418.
The Supreme Court of Ohio recently resolved a conflict among Ohio appellate court decisions and adopted the Bucyrus-Erie test as the law in Ohio. Belvedere Condominium Unit Owners' Assn. v.R.E. Roark Cos., Inc. (1993), 67 Ohio St.3d 274,617 N.E.2d 1075. Appellant is therefore in error by urging upon us the test in North v. Higbee Co. (1936), 131 Ohio St. 507, 6 O.O. 166,3 N.E.2d 391, which would require, in order to pierce the corporate veil, that the corporation had been formed for the express purpose of committing fraud.
Appellees presented testimony regarding the ownership of RIS, its parent company, and the manipulation of RIS's accounts containing collected premium funds in such a manner as to benefit the parent corporation, and the sister corporations. Furthermore, appellees presented evidence of loans to the principal stockholders and directors personally, which could be reasonably believed by a trier of fact to have come from collected premium funds which RIS was contractually obligated to employ for no purpose other than remittance to appellees. Given the closely held nature of RIS, its parent corporation, and sister corporations, the first prong of the Bucyrus-Erie test (concerning domination and control over the corporation by those to be held liable) is met at least to the extent of withstanding a motion for a directed verdict. We do point out, however, that we do not hold that the closely held nature of the corporation is conclusive in itself with regard to satisfyingBucyrus-Erie. The presence of fraud in a closely held corporation is not, standing alone, a basis to pierce the corporate veil. The procedural posture of this case does not call for us to rule on the ultimate merits of plaintiffs' claim. There exists sufficient evidence such that reasonable minds could differ on the question of whether the individual defendants exercised such domination and control over the corporation that it had no separate mind, will, or existence of its own.
The second prong of Bucyrus-Erie, that such domination and control were used to commit fraud or wrong, is also supported by sufficient evidence so that a directed verdict was improper; appellees presented extensive evidence on the alleged misuse of collected premium funds. The third prong of the Bucyrus-Erie
test, that injury resulted from the acts constituting the first two prongs, was also substantiated by appellees' documentary evidence presented at trial. It was therefore proper for the trial court to grant appellees a new trial against appellant on their claim for disregard of the corporate fiction and resulting personal liability on the part of appellant for RIS's breach of contract.
For the foregoing reasons, appellant's first assignment of error is overruled. *Page 405 
Appellant's second assignment of error alleges that the trial court based its decision to award a new trial upon the factual conclusions of the jury in interpreting the evidence, and in particular upon the jury's answers to specific interrogatories. Appellant urges that the trial court is not entitled to the "hindsight" afforded by the jury's verdict or responses to interrogatories when reevaluating a previous decision to direct a verdict in favor of appellant. We cannot agree. Although the trial court did make mention of the jury's interpretation of the evidence, as expressed in responses to interrogatories, the court clearly based its decision to grant a new trial upon the proper basis: whether sufficient evidence had been presented by appellees from which reasonable minds could conclude that appellant, in his position as an officer and director of RIS, had participated with the other individual defendants in an unauthorized use of collected premium funds. Although the trial court's potentially unfortunate use of the phrase "especially with the hindsight afforded by the jury interrogatories" in making its ruling lends a modicum of support to appellant's contention that the trial court based its ruling upon the jury's determination with regard to the other defendants, rather than based upon the evidence presented in support of appellees' claims against appellant, the record nonetheless reveals no error in granting a new trial. Appellant's second assignment of error is therefore without merit, and is overruled.
Appellant's first and second assignments of error having been overruled, the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
PETREE, J., concurs.
WHITESIDE, P.J., dissents.