NPF IV, INC., et al., Plaintiff,

v.

TRANSITIONAL HEALTH SERVICES,
et. al., Defendants.

No. C2–95–981.

United States District Court,
S.D. Ohio,
Eastern Division.

April 4, 1996.

Randolph C. Wiseman, Bricker & Eckler (Drew H. Campbell and Laralyn Sasaki, of counsel), Columbus, Ohio, for Plaintiff.

Jerome C. Tinianow, Dinsmore & Shohl, Columbus, Ohio, (David Tachau and John David Dyche, Tachau, Maddox & Hovious, PLC, Louisville, Kentucky, of counsel), for Defendants David V. Hall, Randall J. Buford, John G. Hundley and Cardinal Development Co., Inc.

Nicholas D. Satullo, Reminger & Reminger Co., L.P.A. Cleveland, Ohio, (Robert Sills and Jeffrey N. Leibell, Reboul, MacMurray, Hewitt, Maynard & Kristol, New York City, of counsel), for Defendant Transitional Health Services.

## OPINION AND ORDER

GRAHAM, District Judge.

This is an diversity action filed by NPF IV, Inc. ("NPF") and National Century Financial Enterprises, Inc. asserting Ohio law claims against Transitional Health Services ("Transitional"), Cardinal Development Co. ("Cardinal"), David V. Hall, Randall J. Buford and John G. Hundley. This matter is before the court on the individual defendants' motion to dismiss Counts V, VI and X of the complaint pursuant to Fed.R.Civ.P. 12(b)(6)

for failure to state a claim for which relief may be granted.

A motion to dismiss for failure to state a claim "should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). All well-pleaded allegations must be taken as true and must be construed most favorably toward the non-movant. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). A complaint will be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) if there is no law to support the claims made, or if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief. *See Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir.1978).

Plaintiffs are Ohio corporations engaged in the business of purchasing qualified accounts receivable from health care providers. The purchases are financed by the sale of securities by investment banking firms. Plaintiffs conduct business by entering into a sale and subservicing agreement with the provider. Plaintiffs review the provider's accounts receivable, and where those accounts meet plaintiffs' criteria, plaintiffs purchase the receivables from the provider at a discounted value in advance of the actual payment of the accounts by the provider's debtors. Plaintiffs typically purchase accounts on a regular and continuous basis, thereby allowing the provider to receive cash immediately for operating expenses rather than waiting for direct payment in the ordinary course of business from the provider's debtors.

In accordance with the agreement, the health care provider agrees to regularly submit accounts receivable records to the plaintiffs so that plaintiffs may assess the collectibility of the accounts and determine the eligibility and face value of the accounts. When plaintiffs decide to purchase the receivables, plaintiff NPF wires a cash payment to the provider in an amount equal to the discounted value of the receivables minus certain adjustments. The provider agrees to establish a bank account known as a lockbox account into which the provider deposits any payments received from the provider's debtors on the accounts receivable, and these funds are then transferred into a corporate trust account established for the plaintiffs' benefit.

Plaintiffs assert that Cardinal is or was engaged in the business of providing health care services, and that Transitional is the successor in interest to Cardinal. Plaintiffs allege that defendants Hall and Bufford were, respectively, the majority and minority shareholders of Cardinal. Plaintiffs further allege that defendant Hundley was the Vice President of Legal Affairs for Cardinal.

Plaintiffs allege that on December 18, 1992, NPF entered into a sale and subservicing agreement with Cardinal. In October of 1993, Cardinal decided to terminate its agreement with the plaintiffs, and the parties entered into a termination agreement, dated November 1, 1993, which defined the obligations of the parties during the termination of business. Plaintiffs allege that during November and December of 1993, plaintiffs erroneously posted the same amount twice against the outstanding net value of purchased receivables as part of the weekly funding process, which, after adjustment for offsets, resulted in a double payment to Cardinal in the amount of $1,434,758.62. According to plaintiffs, this amount remains due and owing from Cardinal despite several demands for payment. On or about November 1, 1994, Transitional purchased or otherwise acceded to the business of Cardinal.

Plaintiffs now seek recovery of the $1,434,-758.62. In Count V of the complaint, plaintiffs assert a claim for conversion against the individual defendants. Plaintiffs seek to hold the individual defendants liable as officers and shareholders of Cardinal and Transitional. The individual defendants are also named in Count VI, a civil conspiracy claim, and Count X, which alleges a breach of fiduciary duty on the part of the individual defendants.

Defendants argue that plaintiffs' conversion claim should be dismissed. Conversion has been defined as "a wrongful exercise of dominion over property in exclusion of

the right of the owner, or withholding it from his possession under a claim inconsistent with his rights." *Zacchini v. Scripps–Howard Broadcasting Co.*, 47 Ohio St.2d 224, 226, 351 N.E.2d 454 (1976), *rev'd on other grounds*, 433 U.S. 562, 97 S.Ct. 2849, 53 L.Ed.2d 965 (1977). The elements of a conversion claim are: 1) plaintiff's ownership or right to possession of the property at the time of the conversion; 2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and 3) damages. *Haul Transport of VA, Inc. v. Morgan*, Slip Op. No. CA 14859, Montgomery Cty., 1995 WL 328995 (Ohio App.1995); *Fayette Inv. Corp. v. Jack Johnson Chevrolet Co.*, 119 Ohio App. 111, 197 N.E.2d 373 (1963). Further, where the object of conversion has been acquired lawfully, the possessor of such property cannot be held to have converted it or to wrongfully possess it until, upon demand, the possessor fails to restore the object to one who has a right to possess it. *Fidelity & Deposit Co. of Maryland v. Farmers & Citizens Bank of Lancaster*, 72 Ohio App. 432, 52 N.E.2d 549 (1943).

 Money can be the subject of an action for conversion. *See, Carmean v. Yaple*, 21 Ohio L.Abs. 387 (App.1936); *Schutt v. Bates*, 33 Ohio App. 303, 169 N.E. 314 (1929). However, the prevailing view is that an action for conversion of money will not lie unless identification is possible and there is an obligation to deliver the specific money in question. *See, e.g., Lewis v. Fowler*, 479 So.2d 725 (Ala.1985). *See generally*, Annotation, *Nature of Property or Rights Other Than Tangible Chattels Which May Be Subject of Conversion*, 44 A.L.R.2d 927, 936 (1955). Two Ohio courts have followed this rule in unreported decisions. *See Haul Transport*, 1995 WL 328995 at *3; *Security Federal S. & L. Ass'n of Cleveland v. Keyes*, Slip Op. No. 89–G–1524, Geauga Cty., 1990 WL 93135 (Ohio App.1990). Defendants argue that the funds allegedly converted in this case do not meet these criteria.

In regard to the first prong of the conversion test, identification, courts have held that a conversion of money occurs only where the money involved is "earmarked" or is specific money capable of identification, such as money in a bag, coins or notes that have been entrusted to the defendant's care, or funds that have otherwise been sequestered. *Marc Development, Inc. v. Wolin*, 904 F.Supp. 777, 795 (N.D.Ill.1995) (conversion will not lie under Illinois law were the evidence failed to show that the funds were segregated in a separate account); *Stevens v. Butler*, 639 N.E.2d 662 (Ind.App.1994) (money must be a determinate sum with which the defendant was entrusted to apply to a certain purpose; commingled funds are not a separate, specifically identifiable chattel); *General Motors Corp. v. Douglass*, 206 Ill.App.3d 881, 892, 151 Ill.Dec. 822, 565 N.E.2d 93 (1990) (where check containing an overpayment was deposited in defendant's general account, not segregated in a separate account, there was no identifiable fund subject to conversion); *Lawson v. Commonwealth Land Title Ins. Co.*, 69 Md.App. 476, 483, 518 A.2d 174 (1987) (same); *Lewis*, 479 So.2d at 726–727 (noting the absence of evidence that the money was placed in a special account).

Conversion claims have been allowed where the funds in question were specific or sequestered, identifiable monies or funds entrusted to the defendant's care for a specific purpose. *See, e.g., Saydell v. Geppetto's Pizza & Ribs Franchise Sys., Inc.*, 100 Ohio App.3d 111, 652 N.E.2d 218 (1994) (franchise fee which defendant was contractually obligated to return if condition precedent to performance of contract was not met was subject to conversion); *Central Benefits Mut. Ins. Co. v. RIS Admrs. Agency, Inc.*, 93 Ohio App.3d 397, 638 N.E.2d 1049 (1994) (defendant required under agreement to hold collected funds in a fiduciary capacity for plaintiff and remit them to plaintiff).

 Here, plaintiffs allege that the overpayment was wired to defendant Cardinal "as part of the weekly funding process." Complaint, Para. 19. Plaintiffs allege that payments were wired to health care providers such as Cardinal to enable them to meet their operating expenses. Complaint, Para. 13. The money transmitted by plaintiffs to Cardinal was for the purchase by plaintiffs of Cardinal's accounts receivable. There are no allegations that these payments were placed or were required to be placed in a special

account, as opposed to Cardinal's general bank account where the funds would be commingled with Cardinal's other funds. While it is alleged in the complaint that Cardinal was contractually required to establish a special lockbox account in which to deposit monies it collected on the accounts receivable, the complaint is devoid of any allegations that Cardinal or the individual defendants embezzled funds from the lockbox account or failed to deposit money collected from Cardinal's debtors on the accounts receivable into that account. Further, the amount allegedly due to plaintiffs and converted by Cardinal can only be calculated with reference to other offsets due to Cardinal. Complaint, Para. 19. The allegations in the complaint do not contain sufficient facts to allege that the funds allegedly converted are identifiable.

■■■■ An action for conversion also requires that the defendant have an obligation to deliver specific money as opposed to merely a certain sum of money. *Haul Transport,* 1995 WL 328995 at * 4 (no conversion where defendant not contractually obligated to remit specific funds collected to the plaintiff as opposed to paying plaintiff money generally, or to hold collected funds in trust). An action will not lie for the conversion of a mere debt, and where there is only a relationship of debtor and creditor, not an obligation to return identical money, an action for conversion of the funds representing the indebtedness will not lie against the debtor. *Id.* See also, *Huff v. Biomet, Inc.,* 654 N.E.2d 830 (Ind.App.1995); *General Motors,* 565 N.E.2d at 100 (relation of debtor and creditor created between parties upon mistaken overpayment, and conversion cannot lie for the overpayment, which constituted a general debt); *United Merchants & Manufacturers, Inc. v. Sanders,* 508 So.2d 689, 692 (Ala.1987) (no action for conversion for overpayment where relationship of the parties was that of debtor and creditor and where there was no obligation to return the identical money); *Lawson,* 518 A.2d at 117 (same); *Lewis,* 479 So.2d at 727. While an action in conversion is not available under such circumstances, a plaintiff may still proceed with other theories such as breach of contract or assumpsit (quasicontract). *See General Motors,* 565 N.E.2d at 100; *Williams v. Good-*

*year Aircraft Corp.,* 84 Ohio App. 113, 85 N.E.2d 601 (1948) (quasi-contract rights include right of recovery for money paid by mistake).

■■■■ The facts pleaded in the complaint would support at most a finding that a debtor-creditor relationship arose between plaintiffs and defendant Cardinal by reason of the alleged overpayment. The payments made by plaintiffs to Cardinal for the purchase of the accounts receivable are analogous to a loan of money by plaintiffs to Cardinal which was to be repaid in the form of money subsequently collected by Cardinal on the accounts receivable. While Cardinal did have a contractual obligation to place the money it collected from its debtors in a lockbox account for plaintiffs' benefit, the complaint does not allege that any restrictions applied to Cardinal's use or disposal of the money it received from the plaintiffs. There are no allegations that Cardinal or any of the individual defendants had any contractual obligation to place funds obtained from plaintiffs in a specific or separate account rather than in Cardinal's general business account, or that plaintiffs had any right to have any overpayment returned to them in the form of specific monies. No facts are pleaded which would indicate that defendants had any contractual obligation to hold the funds paid by plaintiffs to defendant Cardinal in a fiduciary capacity. The complaint thus fails to state a claim for conversion under the second prong. The individual defendants' motion to dismiss Count V of the complaint is well taken.

■■■■ The individual defendants have also moved for dismissal of the conspiracy claim. Ohio courts recognize a claim for civil conspiracy. A civil conspiracy is "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *LeFort v. Century 21–Maitland Realty Co.,* 32 Ohio St.3d 121, 126, 512 N.E.2d 640 (1987). The elements of a conspiracy claim are: 1) a malicious combination; 2) of two or more persons; 3) injury to person or property; and 4) the existence of an unlawful act independent from the actual conspiracy. *Universal Coach, Inc. v. New*

*York City Transit Auth., Inc.,* 90 Ohio App.3d 284, 629 N.E.2d 28 (1993). Conspiracy in and of itself does not normally establish a basis for recovery in a civil action in Ohio; rather, there must be an actionable wrong committed as a result of the conspiracy. *Minarik v. Nagy,* 8 Ohio App.2d 194, 193 N.E.2d 280 (1963).

■ Defendants focus on the language "in a way not competent for one alone," and argue that this language requires plaintiffs to allege facts demonstrating that one person alone would not have been capable of inflicting the plaintiffs' injuries. This interpretation finds no support in the Ohio cases. The Supreme Court of Ohio in *Kenty v. Transamerica Premium Ins. Co.,* 72 Ohio St.3d 415, 650 N.E.2d 863 (1995) concluded that plaintiff's complaint was sufficient to allege a civil conspiracy, yet made no mention of any acts which could not have been committed by one person alone. The requirement that one person would not have been able to accomplish the acts done in furtherance of the conspiracy is not among the elements listed in *Universal Coach.*

The language may simply refer to the fact that a conspiracy requires a combination of more than one person. The language in the definition could also reasonably mean that an individual who could not otherwise be named as a defendant in the underlying tort claim may nonetheless be liable under a conspiracy theory if he participates with another person in planning the wrong. *See Minarik,* 8 Ohio App.2d at 195, 193 N.E.2d 280 (quoting 1 COOLEY ON TORTS § 74, at 234 (4th ed.)). Yet another possible explanation for the language is found in W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 46, at 324 (5th ed. 1984), where it is noted that in some cases the conspiracy itself can constitute the tort, and that in such cases acts which are legal if performed by one person become illegal by reason of the fact that they are performed by more than one person, *i.e.,* that one person alone is not able or "competent" to commit an injurious act alone. None of the above commentaries on conspiracy supports defendants' argument.

■ Defendants also argue that if the conversion claim is dismissed, the underlying basis for the conspiracy claim would also be eliminated. The conversion allegations in Count V have been dismissed for failure to state a claim, and may not form the basis for the conspiracy claim. Since the conversion alleged in Count V is the only asserted underlying basis for the conspiracy, the conspiracy claim in Count VI must also be dismissed.

■ Finally, the individual defendants move to dismiss plaintiffs' claim for breach of a fiduciary duty. "A 'fiduciary relationship' is one in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." *Stone v. Davis,* 66 Ohio St.2d 74, 78, 419 N.E.2d 1094 (1981). The fact of the relationship must be proved. *In Re Termination of Employment of Pratt,* 40 Ohio St.2d 107, 321 N.E.2d 603 (1974). The relationship of debtor and creditor without more is not a fiduciary relationship. A fiduciary duty need not arise out of contract but may arise out of an informal relationship where both parties understand that a special trust or confidence has been reposed. *Blon v. Bank One, Akron, N.A.,* 35 Ohio St.3d 98, 519 N.E.2d 363 (1988); *Umbaugh Pole Bldg. Co. v. Scott,* 58 Ohio St.2d 282, 390 N.E.2d 320 (1979).

■ According to the allegations in the complaint, plaintiffs had an agreement with Cardinal to purchase Cardinal's accounts receivable at a discounted value and to transmit funds to Cardinal as payment for these accounts, and Cardinal had the obligation to collect the monies due on those accounts receivable and to deposit those funds in an account for plaintiffs' benefit. The complaint contains no allegations that defendants, as officers of Cardinal, neglected their obligation under the agreement to collect monies due on the accounts from Cardinal's debtors or to deposit these funds in plaintiffs' bank account. Rather, the fiduciary duty discussed in Count X allegedly arose by reason of the overpayment mistakenly made by plaintiffs to Cardinal. Plaintiffs have not alleged that Cardinal or the

84

individual defendants were contractually bound to treat the overpayment in a particular fashion. An overpayment to Cardinal, without more, would simply result in the creation of a debt owed by Cardinal to plaintiffs. There are no facts contained in the complaint which would suggest that any special confidence or trust was placed by contractual agreement or otherwise in the individual defendants as a result of this overpayment or that the individual defendants acquired a position of superiority or influence by virtue of the overpayment. There are no facts alleged which would indicate that the individual defendants agreed to assume a fiduciary role in relation to the overpayment.

A resulting trust is one based on the intention of the parties, and has been defined as "one which the court of equity declares to exist where the legal estate in property is transferred or acquired by one under facts and circumstances which indicate that the beneficial interest is not intended to be enjoyed by the holder of the legal title." *First Nat'l Bank of Cincinnati v. Tenney,* 165 Ohio St. 513, 515–516, 138 N.E.2d 15 (1956). Resulting trusts are imposed in three general situations: 1) where an express trust fails in whole or in part; 2) where an express trust is performed without exhausting the trust estate; and 3) purchase-money trusts. *Id.*; *John Deere Indus. Equip. Co. v. Gentile,* 9 Ohio App.3d 251, 459 N.E.2d 611 (1983). There are no allegations in the complaint which would indicate that a resulting trust could be imposed in this case.

A constructive trust is an appropriate remedy against unjust enrichment. *Ferguson v. Owens,* 9 Ohio St.3d 223, 459 N.E.2d 1293 (1984). Constructive trusts are designed to prevent fraud or other inequity, and they create an equitable title in some other person, irrespective of the intention of the parties. *Peterson v. Teodosio,* 34 Ohio St.2d 161, 297 N.E.2d 113 (1973). A constructive trust may be imposed where there is a duty to convey property because it was acquired through fraud, duress, undue influence, mistake, breach of a fiduciary obligation, or abuse of a confidential relationship.

*Croston v. Croston,* 18 Ohio App.2d 159, 247 N.E.2d 765 (1969).

A constructive trust is a remedial technique utilized by courts of equity to do justice. *Peterson,* 34 Ohio St.2d at 172, 297 N.E.2d 113. While a breach of fiduciary duty may form the basis for a constructive trust, *Id.* at 171, 297 N.E.2d 113, the fiduciary duty in such a case must necessarily exist at the time the property was transferred. The fact that a court may subsequently impose a constructive trust as an equitable remedy for the mistaken transfer of property does not result in the retroactive imposition of a fiduciary duty on the transferee of the property at the time of the transfer. A defendant can hardly be charged with violating a fiduciary or trust relationship which did not exist until a court created the constructive trust as a remedy long after the defendant acquired the property. The court concludes that plaintiffs have failed to allege sufficient facts which, if proved, would have supported a claim for breach of a fiduciary duty on the part of the individual defendants.

In accordance with the foregoing, the motion of the individual defendants to dismiss Counts V, VI and X of the complaint is granted.