**In re James M. McWEENEY, Debtor.**

**Kyle Howard, Plaintiff,**

**v.**

**James M. McWeeney, dba, Lebanon Family Health Care, Inc., Defendant.**

**Bankruptcy No. 98–15463.
Adversary No. 98–1308.**

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

July 31, 2000.

## MEMORANDUM OF DECISION

JEFFERY P. HOPKINS, Bankruptcy Judge.

Plaintiff, Kyle Howard ("Howard"), a physician, commenced this adversary pro-

ceeding on December 11, 1998, by filing a Complaint (Doc. 1) seeking a determination that the debt owed him by the Defendant, Debtor James M. McWeeney ("McWeeney"), is nondischargeable under 11 U.S.C. § 523(a)(6).[1] Presently before the Court is a summary judgment motion ("Motion") (Doc. 24) filed by McWeeney on February 2, 2000. The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334 and the Standing Order of reference entered in this district on July 30, 1984. This is a core proceeding. 28 U.S.C. § 157(b)(2)(I).

### I

Summary judgment is governed by Fed. R.Civ.P. 56, made applicable to this adversary proceeding pursuant to Fed. R. Bankr.P. 7056. The rule provides that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue exists with respect to a material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the initial burden of "identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If this is accomplished, the nonmoving party must establish the existence of facts, beyond mere allegations or denials in the pleadings, that demonstrate a

---

1. The Complaint further alleges nondischargeability under the authority of 11 U.S.C. § 523(a)(2). However, the Plaintiff subsequently moved to dismiss, pursuant to Fed. R.Civ.P. 41(a)(2), his action to the extent premised upon § 523(a)(2). (*See* Doc. 38 at 2.) The Court entered an order to this effect on May 1, 2000. (*See* Doc. 43.)

genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. In this regard, the evidence of the non-movant is to be taken as true and all justifiable inferences are to be drawn in favor of the non-movant. *Anderson,* 477 U.S. at 254, 106 S.Ct. 2505. Notwithstanding, the mere existence of a scintilla of evidence in support of the non-movant's position is insufficient. *Id.* at 252, 106 S.Ct. 2505. There must exist sufficient evidence requiring resolution by a trier of fact of the parties' differing versions of the truth. *Id.* at 249, 106 S.Ct. 2505.

## II

None of the material facts in this proceeding is in dispute. In the latter part of 1995, Howard was looking for an opportunity to establish a family medical practice in southwest Ohio. At that time, Howard decided that he would attempt to do so through an arrangement with McWeeney, who had an established practice in Lebanon, Ohio, known as Lebanon Family Health Care. The parties entered into a verbal agreement whereby Howard would provide care to new and existing patients of McWeeney's practice and retain all fees collected for such services in exchange for payment of one-half of the expenses of the practice. Howard also paid McWeeney to bill for his services and collect the corresponding fees. When Howard's fees were collected by McWeeney, all such funds were deposited into the general checking account of Lebanon Family Health Care. McWeeney possessed exclusive control over this account. Subsequently, Howard terminated the parties' business relationship after one year, alleging that McWeeney never paid him for a substantial portion of his collected fees. McWeeney admits that he owes Howard for services rendered by Howard under their arrangement.

## III

■ Howard contends that the debt in question falls within the purview of the § 523(a)(6) exception to discharge because it allegedly arose from McWeeney's conversion of Howard's money. Some, but not all, acts of tortious conversion constitute a "willful and malicious injury" under § 523(a)(6). *Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974, 978, 140 L.Ed.2d 90 (1998). McWeeney has moved for summary judgment on the ground that the evidence does not support the conversion claim. Accordingly, the sole issue before the Court is whether there is any serious factual dispute regarding Howard's contention that McWeeney converted earmarked or entrusted funds, or funds that were by contract or otherwise supposed to be sequestered which were owing to Howard.

■ Under Ohio law an action for conversion of *money* arises only where: (1) there exists an obligation on the part of the defendant to deliver to the plaintiff specific money; and (2) the money is capable of identification. *Haul Transport of VA, Inc. v. Morgan,* No. CA 14859, 1995 WL 328995, at *3–4 (Ohio Ct.App. June 2, 1995); *NPF IV, Inc. v. Transitional Health Servs.,* 922 F.Supp. 77, 81 (S.D.Ohio 1996). Evidence supporting both elements of conversion must be present in order for a plaintiff to overcome a motion for summary judgement. *See id.*

### SPECIFIC MONEY

■ In Ohio, as in most jurisdictions, the standard for proving conversion of money is an exacting one. To establish the first element under Ohio law the plaintiff must demonstrate that the defendant owes an obligation to deliver "identical" money as opposed to a certain sum of money. *Haul Transport,* 1995 WL 328995 at * 4. The latter situation creates only an indebtedness stemming from a debtor-creditor relationship. *Id.* The facts of *Haul Transport* illustrate this well established principle.

In *Haul Transport,* the plaintiffs were two interstate trucking companies. The plaintiffs brought an action for, among oth-

er things, conversion of funds against Morgan Transport, the company that leased the tractor-trailers and drivers, and against its sole shareholder and his wife, in their individual capacities. The plaintiffs had entered into an agreement with Morgan Transport's brokerage division ("MTIS") whereby the latter was to provide the plaintiffs with minimum monthly shipping orders from its shipping customers. The agreement required MTIS to bill the customers directly and remit payment to the plaintiffs at an agreed rate. When Morgan Transport began to experience financial difficulty, it used some of the funds paid by the shipping customers of MTIS to satisfy other business expenses. The trial court rejected the plaintiffs' conversion claim on the grounds that the evidence failed to show that MTIS had any obligation to remit the specific funds to the plaintiff. On appeal, the ruling was affirmed. In so doing, the appellate court reasoned:

> There was nothing in the [parties'] agreement which required Morgan Transport to remit to [the plaintiffs] any portion of the specific monies that it received from its shipping customers; Morgan Transport could fulfill its obligation to [the plaintiffs] by paying money, generally. When Morgan Transport received payment from its shipping customers, those specific monies became its property. [The plaintiffs] never had an ownership interest in these specific monies, and it never had a right to possess them. All [the plaintiffs] had was a right to collect payment on the debt Morgan Transport owed [them]. The relationship between the parties under the [agreement] was merely that of debtor and creditor[.]

*Id.*

■ Drawing all inferences from the evidence in a light most favorable to the plaintiff, as we must at this stage of the proceedings, the Court finds that it fails to support the first element of conversion. A broken promise to pay a certain sum of money does not meet the stringent specific fund requirement for the establishment of a money conversion claim. Even if we were to conclude that the Plaintiff had offered sufficient proof as to create a material factual dispute regarding this element, we also find lacking any evidence buttressing the second element of the claim, namely that the funds converted are identifiable.

## IDENTIFICATION

As mentioned, the second element that must be shown under Ohio law to support a claim for tortious conversion of money is that the specific money that is to be set aside by promise, agreement or fiduciary duty must be identifiable. *NPF IV*, a recent decision from our District Court by Judge Graham, illuminates this subtle but well established principle:

> [C]ourts have held that a conversion of money occurs only where the money involved is "earmarked" or is specific money capable of identification, such as money in a bag, coins or notes that have been entrusted to the defendant's care, or funds that have otherwise been sequestered. *Marc Development, Inc. v. Wolin*, 904 F.Supp. 777, 795 (N.D.Ill. 1995) (conversion will not lie under Illinois law where the evidence failed to show that the funds were segregated in a separate account); *Stevens v. Butler*, 639 N.E.2d 662 (Ind.App.1994) (money must be a determinate sum with which the defendant was entrusted to apply to a certain purpose; commingled funds are not a separate, specifically identifiable chattel); *General Motors Corp. v. Douglass*, 206 Ill.App.3d 881, 892, 151 Ill.Dec. 822, 565 N.E.2d 93 (1990) (where check containing an overpayment was deposited in defendant's general account, not segregated in a separate account, there was no identifiable fund subject to conversion); *Lawson v. Commonwealth Land Title Ins. Co.*, 69 Md. App. 476, 483, 518 A.2d 174 (1986) (same); *Lewis [v. Fowler ]*, 479 So.2d

[725,] 726–27 [ (Ala.1985) ] (noting the absence of evidence that the money was placed in a special account). *NPF IV,* 922 F.Supp. at 81. Again, the facts are illustrative of the legal proposition cited.

In *NPF IV,* the purchaser of a health care provider's accounts receivable initiated an action for, among other things, conversion against the provider and its officers to recover a mistaken overpayment. The defendants filed a motion to dismiss the conversion claim pursuant to Fed.R.Civ.P. 12(b)(6). The complaint averred that the parties had entered into an agreement whereby the plaintiff would review and purchase, on a continuous basis, acceptable accounts receivable of the health care provider. The plaintiff would wire a cash payment to the provider once a decision to purchase was made. Pursuant to this business relationship, the plaintiff alleged that it mistakenly wired a duplicate payment to the defendant. The plaintiff's complaint asserted that the defendants' refusal to surrender the funds on demand constituted conversion. The court disagreed, granting the motion to dismiss. The court predicated its ruling upon the fact that the funds were wired into a general account of the provider where they were commingled. Specifically, the court found that the complaint failed to state a claim for conversion of money because it failed to allege: (1) that the continuous payments under the agreement were segregated and identifiable as opposed to being commingled in the provider's general business account; and (2) that the defendant had a contractual obligation to place the funds in a segregated account. *Id.* 81–82.

## IV

■ The record in this proceeding reveals that Howard falls well short of establishing either of the elements necessary to sustain an action for conversion of money. As noted, the evidence relied upon by Howard does not demonstrate that the exact funds in question are capable of identification. The fees for Howard's services that were collected by McWeeney were deposited into the general account of Lebanon Family Health Care. (*See* Pl. Kyle Howard's Aff. in Supp. of Mem. in Opp. To Mot. for Summ. J. at ¶ 3; Debtor's Aff. in Supp. of Mot. for Summ. J. at ¶ 8.) As such, the funds became commingled thus losing any element of specific identification. Howard admits in his deposition that he has no proof that the funds in question were ever separated and thus identifiable.[2]

■ Nor is there any evidence suggesting that McWeeney had an obligation to separate the specific funds and deliver those to Howard. Similar to *Haul Transport,* nothing in the record prohibits McWeeney from fulfilling his obligation to Howard simply "by paying money, generally." *See Haul Transport,* 1995 WL 328995 at * 4. As a result, the receivables collected by McWeeney for Howard became McWeeney's property upon collection[3], and Howard possesses only a right

---

2. Howard testified in his deposition as follows:

> Q: You don't have any information, do you, that there is actually a fund that represents the money that you were entitled to, you claim to be entitled to?
> A: I don't have a clue.
> Q: You are not aware of any bank account, or there is no Swiss account, as far as you know?
> A: Not that I know of.

(Oct. 26, 1999 Dep. of Kyle Howard, M.D. at 96–97.)

3. Howard states by affidavit that "[a]t no time did Dr. McWeeney have any right or title to the money that he collected for my fees for service either before or after the termination of our relationship." (Pl. Kyle Howard's Aff. in Supp. of Mem. in Opp. to Mot, for Summ. J. at ¶ 15.) Besides being self-serving, this assertion states a legal conclusion that is unsupported by the evidence. Moreover, Howard's affidavit testimony does not create a genuine issue of material fact. *See Black v. Parke,* 4 F.3d 442, 449 (6th Cir.1993) (assertion of legal conclusion is not sufficient to create a genuine issue of material fact); *Wood*

to collect payment on a debt owed by McWeeney. *See id.*

Howard argues strenuously, however, that the facts of this case are analogous to those in *State of Texas v. Walker*, 142 F.3d 813 (5th Cir.1998), *cert. denied*, 525 U.S. 1102, 119 S.Ct. 865, 142 L.Ed.2d 768 (1999). Relying upon the result reached by the Fifth Circuit in *Walker*, overruling a grant of summary judgment for the debtor, Howard contends that summary judgment in this case would likewise be inappropriate. He asserts that a trial pursuant to § 523(a)(6) on nondischargeability of the tortious conversion claim raised in the Complaint is warranted.

Howard's reliance upon *Walker* is misplaced. In *Walker*, the debtor was a heart surgeon on the faculty of the University of Texas. As a condition of his employment, the debtor executed a contract obligating him both to assign and deposit "all professional fees earned as a result of court appearances, depositions, or legal consultations" into a certain university account. After signing this contract, the debtor received considerable fees for such services and failed to remit them to the university. The university filed an action against the debtor in state court asserting, *inter alia*, a claim for conversion of the funds. The action was removed to federal court after which the district court awarded summary judgment to the debtor concluding that the debt related to the fees earned prior to the bankruptcy proceeding was discharged. As noted, the Fifth Circuit reversed and remanded the case for a factual determination of whether the debtor's retention of the fees constituted a "willful and malicious injury" under § 523(a)(6).

Although it is a close question, *Walker* is distinguishable from present case. There the contract, as interpreted by the Fifth Circuit, called for the assignment and deposit of the specific professional fees earned by the debtor into a particular university account established solely for that purpose.[4] In *Walker*, the debtor never had any right or claim to the identified fees in question, rather those specific funds, by contract, were entrusted to his care only long enough to be deposited into the university's account. If in this case, the parties' agreement had been shown to require that McWeeney was to hold the specific patient receipts in some fiduciary capacity for Howard, then Howard would have been the beneficial owner of those particular funds, and he would have been entitled to bring a conversion action. *See Haul Transport*, 1995 WL 328995 at * 4; *see also Bucyrus–Erie v. General Products*, 643 F.2d 413, 419–20 (6th Cir.1981) (judgment for conversion affirmed where corporate defendants had agreed to hold monies in question, sales proceeds, in trust for plaintiff).

There has been no showing of any similar contractual obligation on the part of McWeeney to hold in trust those fees earned by Howard as there had been in *Walker* and *Bucyrus–Erie*. Nor is there evidence demonstrating that McWeeney was required to hold those earnings separate. All that has been shown to exist is that there was an agreement for the fees generated from the services of both doctors to be deposited in the firm's general operating account and that Howard was to be paid from that account.[5] Despite their

---

*v. City of Lakeland*, 203 F.3d 1288, 1292 (11th Cir.2000) (same).

**4.** In Texas the standards for tortious conversion of money is very similar to that in Ohio. *See Newsome v. Charter Bank Colonial*, 940 S.W.2d 157, 161 (Tex.App.1996) ("Money is subject to conversion only when it can be identified as a specific chattel, and not where an indebtedness may be discharged by the payment of money generally. An action for

conversion of money will lie where the money is (1) delivered for safe keeping; (2) intended to be kept segregated; (3) substantially in the form in which it is received or an intact fund; and (4) not the subject of a title claim by its keeper.") (citations omitted).

**5.** Howard's understanding of his agreement with McWeeney was as follows:

Q: At the time that you started seeing patients there, what was your understand-

agreement, McWeeney was free to, and apparently did, use the patient receipts in that account to operate a sinking enterprise and for personal reasons. When Howard was not paid according to the contract, a claim to collect payment on the debt against McWeeney arose. The relationship that existed between the parties in this case, as distrustful as it has become, is merely that of debtor and creditor stemming from McWeeney's broken promise to pay Howard for the earnings from his medical practice.

Additional authority for the conclusion being reached here is moored upon a case with very similar facts. *See Cumis Ins. Soc., Inc. v. Peters,* 983 F.Supp. 787 (N.D.Ill.1997). In *Cumis,* the plaintiff asserted a conversion action against a collection agency seeking funds that the agency was allegedly required to pay the plaintiff under a collection agreement between the parties. Specifically, the complaint alleged that the parties entered into an agreement whereby the agency would collect debts owed to the plaintiff in exchange for commissions that the agency was to deduct from the funds collected. The complaint further alleged that the principals of the collection agency failed to disclose certain remittances and converted those funds to their own personal accounts. The collection agency moved to dismiss the conversion claim pursuant to Fed.R.Civ.P. 12(b)(6). The court granted the defendant's motion on the grounds that the complaint failed to allege (1) that the funds due to the plaintiff were segregated from the defendants' funds and (2) that the parties' agreement required the defendant to do so. *Id.* at 794. The court reasoned that the plaintiff became a mere creditor of the defendants by allowing the defendants to collect its

debts without an agreement requiring the defendants to segregate and return the precise funds collected. *Id.*

Likewise, the evidence before this Court fails to support a claim for conversion under either prong of the Ohio test. Given that Howard's § 523(a)(6) action is premised exclusively upon an allegation of conversion and he has failed to establish the existence of facts necessary to sustain an action for conversion of money, further analysis under § 523(a)(6) is unnecessary. The Debtor's motion for summary judgment on Howard's claim of conversion of funds is well taken.

### V

For the foregoing reasons, the summary judgment motion (Doc. 24) filed by the Defendant, Debtor James M. McWeeney, on February 2, 2000, will be **GRANTED** and the Complaint to Determine Dischargeability of Debt (Doc. 1) filed by the Plaintiff, Kyle Howard, on December 11, 1998, will be **DISMISSED.** An order to this effect will be entered.

---

ing of the space sharing arrangements? In other words, what were the terms that you understood to be operating under with Dr. McWeeney?

A: That I was to share expenses on a 50/50 basis, and I was fee for service, that I would—what income I produced was my income.

Q: Anything else?

A: Like what?

Q: Well, I don't want to make up anything for you to have agreed to. I'm just asking what your understanding was at the time.

A. That was my understanding.

(Oct. 26, 1999 Dep. of Kyle Howard, M.D. at 35.)