**BUCYRUS–ERIE COMPANY,**
**Plaintiff-Appellee,**
**Cross-Appellant,**

v.

**GENERAL PRODUCTS CORPORATION**
**and John A. Hubly, Defendants-Appel-**
**lants, Cross-Appellees.**

**Nos. 79–3172, 79–3173.**

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 10, 1980.
Decided March 5, 1981.

E. Bruce Hadden, Jones, Campbell & Hadden, James P. Jones, Columbus, Ohio, for defendants-appellants, cross-appellees.

Rudolph Janata, Jr., Porter, Wright, Morris & Arthur, John C. Hartranft, Robert W. Trafford, Columbus, Ohio, for plaintiff-appellee, cross-appellant.

Before ENGEL and BROWN, Circuit Judges, and MARKEY, Chief Judge.*

MARKEY, Chief Judge.

John A. Hubly (Hubly) appeals from a judgment of the United States District Court for the Southern District of Ohio holding him personally liable to Bucyrus-Erie Company (B–E) for fraud, participation in conversion, intentional or reckless mismanagement and as the alter ego of General Products Corporation (General).

B–E cross appeals that portion of the judgment denying it recovery of interest on General's corporate obligation. We affirm in part and reverse in part.

**Background**

This diversity action arises out of the sale of heavy construction machinery and related parts and accessories (machinery) by B–E, a Wisconsin corporation, to General, an Ohio corporation, pursuant to floor plan financing agreements calling for payment of the purchase price in monthly installments of 10%, with interest at 11¾% per annum on the unpaid balance, and permitting General to employ, at its election, a "Fleet Rental" arrangement whereby General might lease machines to its customers and remit 80% of the monthly rentals to B–E. General was required, within 15 days of a sale, to remit to B–E so much of sale proceeds as are necessary to pay B–E in full for the machinery sold, plus accrued interest thereon. During the period between sale and remittance to B–E, General agreed to hold the monies due B–E "in trust". To secure payment, B–E retained a purchase money security interest in the machinery and in the sale proceeds.

B–E filed its original complaint on December 21, 1976. An amended complaint, filed April 11, 1978 contained 11 claims for relief, Counts 1–7 against General and Counts 8–11 against Hubly individually. Hubly is president, chairman of the board and majority shareholder of General. B–E alleged that Hubly fraudulently misrepresented for two years the status of five machines as having been leased by General, when those machines had actually been sold; that Hubly participated in conversion of the proceeds of the sale to his own personal use and to that of General; and that Hubly negligently mismanaged the affairs of General. B–E requested that Hubly be held personally liable, as the alter ego of General, for the corporate obligations arising from sale of the machines.

There being no serious dispute over its liability, the district court directed a verdict against General on Counts 1–7. That verdict is not challenged on this appeal. Hubly's liability on the claims of fraud, conversion and negligent mismanagement (Counts 8–10, denominated by the court as Claims One, Two, and Three, respectively) were submitted to a jury for determination of liability and damages.

Respecting those claims, the court's instruction included:

In the event that you compute damages in this case, except for Plaintiff's theory of holding Defendant Hubly liable in damages for General Products' liability to Bucyrus-Erie concerning the five machines—Claim 4 [sic]—sold to third parties, you are instructed to disregard the issue of interest, as this matter will be later considered by the Court.

Concerning the alter ego claim (Count 11, denominated Claim Four by the court), the court instructed:

Regarding damages, if you find that Hubly is personally liable, having found for the Plaintiff concerning the three ele-

---

* Honorable Howard T. Markey, Chief Judge, United States Court of Customs & Patent Appeals, sitting by designation.

ments mentioned, then the amount of damages recoverable will be the amount unpaid to Plaintiff for the five machines, $247,842.57 plus $79,882.38 interest.

Alternate verdict forms were supplied. The instruction relevant on this appeal read:

Two, if you find for the Plaintiff against Defendant Hubly, then you will sign the verdict form entitled "Verdict for Plaintiff," and indicate the dollar amount of damages you decide to award.

The court submitted special interrogatories to the jury, asking it to determine whether it found Hubly to have committed fraud, conversion and mismanagement and, if so, the amount of damages it awarded under each claim. In each instance, the jury said it found Hubly liable and found damages in the amount of $247,842.57.

Respecting the alter ego claim, the jury was given Interrogatory Nine. The jury was not asked about damages if it found liability under the alter ego theory, that question having been determined and announced by the court as quoted above. Special Interrogatory Nine read:

If you rendered a verdict in favor of Plaintiff and against Defendant Hubly, did you find the corporate entity was disregarded and Hubly held liable for certain sums General Products owes to Bucyrus-Erie?

The jury signed the "Verdict for Plaintiff" form and answered "Yes" to Interrogatory Nine. Its unanimous verdict for B–E on all counts made no reference to interest.

In its Order of August 24, 1978, and in its judgment of the same date, the court awarded judgment to B–E against Hubly in the amount of $247,842.57. On August 29,

1978, B–E filed a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure [1] requesting that the judgment be amended to include the interest specified by the court under the alter ego theory, i. e., $79,882.38, on the ground that it had been omitted through clerical error or inadvertence. In an Order of October 17, 1978, the court denied the request. Though the court found error on other matters and amended the judgment accordingly, and though it made no finding on whether the omission of $79,882.39 interest resulted from error (it said the omission "may" not have resulted from error), the court decided that it had erred in specifying that amount in its charge, saying:

In any event, this Court has determined that its charge to the jury regarding interest was erroneous. An individual, even though personally liable for corporate debts as an "alter ego" of the corporation may nonetheless be not liable for a contractual interest rate applicable only to corporations.

The basis for the court's denial of the request was its view that an award of the $79,882.39 contract interest would violate the Ohio usury laws.[2]

Hubly moved for judgment notwithstanding the verdict or for a new trial, challenging the instructions on alter ego, fraud, conversion, and negligent mismanagement and the court's refusal of instructions on certain defenses. The court denied Hubly's motion in an Order of November 9, 1978.

### Issues

Whether the district court erred in: (1) instructing the jury on Hubly's liability under the alter ego, fraud, conversion, or negligent mismanagement theory of liability;

1. Rule 60 provides in pertinent part:
   (a) Clerical mistakes
   Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party . . .
   (b) Mistake; inadvertence; excusable neglect; newly discovered evidence; fraud, etc.
   On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect;

2. The contract interest rate (11¾%) exceeded the maximum chargeable to individuals under Ohio law (8%). Ohio Rev.Code § 1343.01. Under Ohio law, the defense of usury is not available to corporations. Ohio Rev.Code § 1701.68.

(2) refusing instructions on certain defenses; and (3) declining to award interest at the contract rate.

## OPINION

### I. Jury Instructions

The purpose of jury instructions is to inform the jury on the law and to provide proper guidance and assistance in reaching its verdict. The trial court enjoys considerable latitude in selecting appropriate language, the test being whether the instructions as a whole correctly state the applicable law. The instructions here met that test.

### A. Alter Ego

■ The notion of the corporation as a legal entity is a fiction of the law introduced for convenience in conducting business. Under Ohio law [3], when "urged to an end subversive of its policy", the fiction should be disregarded and the corporation considered as an aggregation of persons, both in equity and at law. *State v. Standard Oil Co.*, 49 Ohio St. 137, 30 N.E. 279 (Sup.Ct.1892). To honor the fiction in the present case would be "subversive of its policy".

■ No precise test for disregarding the corporate fiction has been articulated by the courts, each case being regarded as "sui generis" and decidable on its own facts.[4] Nonetheless, certain general principles have been recognized. As recently set forth in *Brunswick Corp. v. Waxman*, 459 F.Supp. 1222, 1229 (E.D.N.Y.1978), aff'd 599 F.2d 34 (2d Cir. 1979), the corporate fiction should be disregarded when: (1) domination and control over the corporation by those to be held liable is so complete that the corporation has no separate mind, will, or existence of its own; (2) that domination and control was used to commit fraud or wrong or other dishonest or unjust act, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong [5]. The district court's present instruction to the jury on the alter ego claim was clearly in accordance with those principles.

■ In attacking the jury's alter ego finding, Hubly says the court's instructions overemphasized some corporate formalities to the exclusion of others, such as his contracting in the corporate name and paying debts with corporate checks, and that the court included in its instructions only those formalities favorable to B–E. That assertion is without merit.

Observance of corporate formalities was but one of several factors the jury was instructed to consider. Moreover, the list of corporate formalities included in the instruction did not purport to be exhaustive, the instruction directing the jury to consider the enumerated formalities and ". . . similar matters".

■ Hubly then says the district court erred in instructing the jury to consider whether the corporation was adequately financed, originally or subsequently, for the business in which it was engaged. We find no error in the instruction. Undercapitalization is generally regarded an important factor in applying the alter ego doctrine,[6] and sound policy considerations support a requirement for adequate financing as a prerequisite to the limited liability privilege afforded those who do business in a corporate form.

■ Finally, Hubly attacks the court's alter ego instructions as lacking a requirement that the jury determine whether he used General to perpetrate a fraud.

---

3. Because this is a diversity action, Ohio law is controlling. *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

4. *De Witt Truck Brokers v. Fleming Fruit Co.*, 540 F.2d 681 (4th Cir. 1976). The law of South Carolina, insofar as applicable here, is substantially identical to Ohio law.

5. See also, *Lowendahl v. Baltimore & Ohio R. R.*, 247 A.D. 144, 287 N.Y.S. 62, 76 (1936), *aff'd* 272 N.Y. 360, 6 N.E.2d 56 (Ct.App.1936); *Bergen v. Columbia Broadcasting System, Inc.*, 453 F.2d 991 (5th Cir. 1972).

6. *De Witt Truck Brokers, supra*, note 5; *Anderson v. Abbott*, 321 U.S. 349, 64 S.Ct. 531, 88 L.Ed. 793 (1944).

Though fraud is a frequent ground for application of the alter ego doctrine, it is not essential. The courts will disregard the corporate fiction when its retention would produce injustice or inequitable consequences. *State v. Standard Oil Co.*, supra; *Anderson v. Abbott*, supra note 6, , at 361, 64 S.Ct. at 537; *National Marine Service v. Thibodeaux*, 501 F.2d 940, 942 (5th Cir. 1974); *Krivo Industrial Supp. Co. v. National Distill. & Chem. Corp.*, 483 F.2d 1098, 1106 (5th Cir. 1973).

We conclude in light of the foregoing that the district court's instruction to the jury on the alter ego claim was proper.[7]

### B. Fraud

■ Hubly contends that the instruction on fraud was incorrect as a matter of law because the court did not instruct the jury that he must have "knowingly" engaged in misrepresentations of fact as a prerequisite to a finding of fraud. The contention is disingenuous. The court gave a seven paragraph instruction on fraud, in which it required the jury to determine whether Hubly, "personally" or through others, "intentionally" caused misrepresentations, by statements or "intentional" nondisclosures, and whether those misrepresentations or nondisclosures were "intended by Hubly" to deceive B–E. It is immaterial that the word "knowingly" was not employed, when the instruction so clearly required the jury *to determine whether Hubly acted with the* requisite degree of scienter. The concentration of the instruction on Hubly's intention renders equally meritless Hubly's argument that the instruction caused him to be held liable for statements made by others.

### C. Conversion

Hubly argues that the district court erred in refusing to instruct the jury on the ele-

ments of a legal trust. He contends that no legal trust was created, that there existed merely a debtor-creditor relationship between General and B–E, and that there could therefore be no conversion, any security interest that B–E might have had in the sale proceeds being lost when those proceeds were commingled with other corporate funds of General.

■ B–E's conversion claim is based on General's sales and its subsequent failure either to pay for the machines sold or to honor its obligation to hold the proceeds of the sale and otherwise protect B–E's interests therein until B–E was paid. The contract requires that General remit to B–E within 15 days of a sale that portion of the proceeds necessary to pay B–E in full for the machine sold. It does not, as Hubly contends, contemplate the establishment of a debtor-creditor relationship between the parties with respect to the proceeds. The evidence establishes that the sale proceeds were deposited by General in its accounts and used to pay other corporate obligations, as well as by Hubly personally. On those facts, the district court committed no error in concluding that those actions, and Hubly's participation therein, constituted a conversion as a matter of law.

■ Hubly's contention that there could be no conversion because sale proceeds were commingled with other corporate funds is without merit. There is no dispute respecting the identity of the proceeds or as to their intended and actual disposition. Nor is this a case involving two secured creditors, each contending that certain funds in a debtor's account are proceeds from the sale of their respective collateral. That the conversion here of the sale proceeds was accomplished by or associated with their

---

7. Hubly attacks the instructions, not the evidence, and with good reason, for the record establishes that as its president, chairman, and majority shareholder, he dominated General, appropriating its assets to his personal use in complete disregard of the corporate entity and to the prejudice of its creditors. Monies diverted to Hubly's personal use were not evidenced by promissory notes, no interest was charged

thereon, and no repayment schedule was established. False reporting of sales as rentals was a fraud, wrong, or dishonest act, causing loss to plaintiff. Thus the jury's finding that Hubly functioned as the alter ego of General, and the jury's resulting disregard of the corporate fiction, are supported by the evidence and the law.

commingling with other corporate funds is simply irrelevant.

■ Thus the district court did not err in refusing to instruct the jury regarding the elements of a legal trust.

### D. Negligent Mismanagement

Against B–E's claim that Hubly is liable for negligently mismanaging the affairs of General, Hubly contends: (1) that there is no cause of action for negligent mismanagement and (2) that the district court erred in instructing the jury on a gross negligence standard when B–E alleged only negligent mismanagement. Hubly urges that the issue of gross negligence was not tried with the express or implied consent of the parties.

■ In light of supporting authority from other jurisdictions and a lack of contrary authority in Ohio, the district court properly recognized a cause of action for grossly negligent mismanagement under the circumstances of this case. Whether an issue is tried with the express or implied consent of the parties is a matter within the trial court's discretion.[8] Because Hubly has shown neither an abuse of that discretion, nor prejudice resulting from the instruction on gross negligence, his contention cannot prevail.[9]

### E. Refused Instructions on Defense

■ Hubly's contention that the district court should have charged the jury regarding waiver, estoppel, and laches is equally unavailing. Those defenses require proof of specific elements, consisting primarily of actions or omissions by B–E giving rise to those defenses. No such elements are present in the evidence of record, Hubly's sole reliance being on B–E's failure

to demand his personal guarantee. That failure was not a knowing relinquishment of the right to redress of harms caused by Hubly's subsequent misconduct. To effectively charge a trial court with failure to provide an instruction, one must first show the presence of evidence in the record sufficient to support submission of that instruction. *Lopez v. Southern Pacific Co.,* 499 F.2d 767 (10th Cir. 1974); *General Motors Corp. v. Walden,* 406 F.2d 606 (10th Cir. 1969). Absent such evidence, nothing is present upon which the court could have based the refused instructions.

### II. Interest Rate

Relying on law and equity, B–E says recognition of a usury defense here would accord Hubly more favorable treatment than that accorded persons found liable for corporate obligations in the ordinary course of business.[10] B–E contends further that the very essence of the alter ego theory requires that the entire liability of the corporation (in this case, $247,842.57 plus $79,882.38 interest) be imposed on an individual deemed the alter ego of the corporation. Alternatively, B–E urges that the district court should have at least awarded interest at 8% per annum (see note 2 supra).

Hubly argues that the failure to award interest was not a clerical or inadvertent error correctable by a Rule 60 motion. The jury having failed to include interest in its verdict, he deems it inappropriate to add interest to the judgment.

■ Hubly's position is unsupported by the record. The question of the amount of interest was never *per se* submitted to the jury. The court's statements to the jury indicated that the court would determine interest, if the jury found for plaintiff on fraud, conversion and mismanagement, and

---

**8.** *Lones v. Detroit, Toledo and Ironton R. R.,* 398 F.2d 914, 922 (6th Cir. 1968); *Nielson v. Armstrong Rubber Co.,* 570 F.2d 272 (2nd Cir. 1976).

**9.** *Nielson v. Armstrong, supra,* note 8 at 276.

**10.** The Court of Appeals of Ohio, in *Amity Finance Corp. v. Crook,* 15 Ohio Law Abs. 243 (Ct.App.1933), distinguished among individuals primarily and secondarily liable on an obliga-

tion. It held that the defense of usury is available to an individual primarily liable (a co-maker with a corporation on a usurious note), and went on to note approvingly the clear line of authority precluding guarantors, endorsers, sureties and others secondarily or collaterally liable for a corporation's liability from imposing the defense of usury in an action to enforce the collateral liability.

that the interest for which Hubly would be liable was $79,882.38 if the jury found for plaintiff on the alter ego claim. Regarding the alter ego claim, the jury answered "Yes" when asked whether it found Hubly "liable for certain sums General Products owes to Bucyrus-Erie". Those "sums", as the jury had been told, included $79,882.39 in interest. In such circumstances, and to the extent that a jury determination of interest amount is deemed necessary, its failure to state that determination, after determining that Hubly was liable for the *sums* owed by General, could only have resulted from error or inadvertent reliance on the court's statements, and a Rule 60 motion is an appropriate means for seeking amendment of the judgment.

The district court erred in refusing to award interest. Even in cases in which an individual is subjected to a usurious rate of interest, Ohio law relieves him only as to that portion of the interest resulting from the excessive rate. Ohio Rev.Code § 1343.-04.

B–E being entitled to some interest on the obligation, the issue becomes the amount of that interest, i. e., whether Hubly, as the alter ego of General, is liable for the contractual interest rate applicable to the corporation, or whether he is liable for interest only at the maximum rate chargeable to individuals under Ohio law. Though the question has not been considered by the Ohio courts, the substantially identical law of New York was applied by the Second Circuit in *McNellis v. Raymond*, 420 F.2d 51 (2d Cir. 1970). *McNellis* was an action by bankruptcy trustee for Donald Potter, Jackson Potter and Potter Securities Corp., to recover interest payments made by Donald Potter to Raymond. Raymond claimed the interest rate was not usurious because all the transactions in negotiation of the underlying loan were with Jackson Potter as agent of the corporation. Substantial evidence established identity of interest between the bankrupt individuals and corporation and that the individuals had full benefit of the loan to the corporation. In holding Donald Potter liable for the corporate interest obligation, the court, quoting the trial judge, said:

"[T]he form of a transaction may be controlling for one purpose, but not for another. Here, while the corporate veil may not be pierced in determining whether the loans were usurious, the corporation and the men behind may be recognized as one for the purpose of repayment" supra, at 53.

In the circumstances of this case, equity requires the same refusal to pierce the corporate veil in upholding the contract, while holding Hubly responsible for all of the obligations of that contract. Moreover, no reason appears, and no authority has been found, to indicate that the Supreme Court of Ohio would reach a contrary conclusion if the question were presented to it.

▬▬▬▬ The alter ego doctrine is equitable in nature. The test of its application, simply stated, is whether recognition of corporateness would produce unjust consequences. In applying the doctrine in the context of this case, equity requires a disregard of the corporate fiction in holding the individual, and dominating, officer-shareholder liable for the corporate obligation, while respecting the corporate fiction in determining the validity of the underlying contract and the proper construction of its terms. Equity will not permit the individual to escape in part the consequences of his election to treat the corporation as an alter ego. The individual is thus treated as having assumed the position of the corporation and held liable to the full extent of its obligation. That approach is alone consistent with basic notions underlying the law of contracts, in assuring that reasonable expectations of the contracting parties be given effect and that each party be given the "benefit of his bargain".

▬▬▬▬ The public policy underlying Ohio's usury laws is not offended by imposition of the contractual interest rate on Hubly. The contract was in form and in fact made with General and was valid under Ohio law. That Hubly is held individually liable for the corporation's entire obligation negates neither the policy of depriving corporations of the usury defense nor the policy of protecting individuals, operating as such, against a usurious rate. Hubly hav-

ing assumed the position of the corporation, may assert against B–E only those defenses which would have been available to General. The evidence establishes that Hubly refused to segregate his personal dealings from those of the corporation. Hence Hubly was not here operating as an individual undertaking a primary liability and intended under Ohio law to be protected against an interest rate higher than 8%. *Amity Finance Corp. v. Crook*, supra note 10.

### Conclusion

The district court's instructions on alter ego, fraud, conversion, and mismanagement were proper, as were its refusals of instructions on waiver, estoppel, and laches.

Because Hubly, as the alter ego of General, is liable to B–E to the full extent of General's corporate obligations, the district court erred in refusing to award interest to B–E.

Accordingly, the judgment of the district court is affirmed in part and reversed in part, and the cause is remanded to the district court for entry of judgment in favor of B–E and against Hubly in the full sum of $247,842.57 plus $79,882.38 interest.