Appellant, Kathie Baker-Farren, appeals the Willoughby Municipal Court's judgment entry awarding appellee, Carol Schudel, damages in the amount of $639, plus costs and interest.
The instant matter began on February 4, 1998, when appellee filed a complaint against appellant and Kathie's Quality Care, Inc., ("Quality Care") for non-payment of wages in the amount of $676, plus costs and interest. Importantly, appellant is the sole shareholder of Quality Care. The matter was referred to the magistrate to conduct a hearing and make recommendations. A small claims hearing was conducted on March 30, 1998.
In a decision filed on April 16, 1998, the magistrate decided that appellant and Quality Care were jointly and severally liable in the amount of $639.60, plus costs and interest. In reaching that decision, the magistrate found that appellant is the sole shareholder of Quality Care, she has an office staff to help her in the daily operation of Quality Care, and she retains the ultimate authority on business matters. The magistrate further determined that appellant has lent money from her personal funds to Quality Care and has written payroll checks from her personal account.[1] Additionally, the magistrate concluded that appellant had wrongfully written bad checks to employees through the business, and had gained from such acts by receiving work from employees without compensating them, while Quality Care received payment from its clients. Consequently, the magistrate decided that the three-prong test in Bucyrus-Erie Co. v. Gen. ProductsCorp. (C.A.6, 1981), 643 F.2d 413, was satisfied and that appellant, therefore, was personally liable for the debts of Quality Care. Finally, the magistrate noted that the parties had stipulated to the amount of damages to be awarded should appellee prevail.
In a judgment entry dated April 17, 1998, the trial court adopted the findings and recommendations contained in the magistrate's decision. The trial court held that appellant and Quality Care were jointly and severally liable to appellee in the amount of $639.60, plus costs and interest at the rate of ten percent per annum from April 17, 1998.
On April 30, 1998, appellant filed a motion for extension of time to file objections to the magistrate's decision. The trial court granted appellant's motion and extended the time to file objections until no later than May 29, 1998. On May 29, 1998, appellant filed objections to the magistrate's decision, claiming that the magistrate erred in determining that she could be held liable for the debts of Quality Care. Specifically, appellant averred that the magistrate erred in finding that each of the three-prongs of the Bucyrus test was met. In a judgment entry dated June 26, 1998, the trial court overruled appellant's objections and affirmed its April 17, 1998 entry adopting the magistrate's decision.
Appellant timely filed this appeal, and now asserts the following assignment of error:
 "The trial court erred in holding [appellant] Kathie Baker-Farren personally liable for the debts of the defendant corporation [Quality Care]."
Appellant contends that the trial court erred in finding that each of the three-prongs of the Bucyrus test was satisfied. Appellant avers that the first prong of the test was not met because the trial court erred in basing its determination on the conclusion that she had ultimate authority on business matters, which she claims does not satisfy the test for complete control. Regarding the second prong, appellant claims that a few dishonored checks written by the business do not demonstrate that dominion and control of the corporation was used to commit a fraud or illegal act. Finally, appellant states that the third prong was not established because the evidence did not show that appellee suffered an injury or unjust loss resulting from her control over the corporation and wrongful conduct.
In Bucyrus, 643 F.2d at 418, the Sixth Circuit Court of Appeals applied Ohio law in reviewing jury instructions in a case concerning the piercing of the corporate veil, and held that a corporation's veil may be pierced when the following three elements are met:
 "* * * (1) domination and control over the corporation by those to be held liable is so complete that the corporation has no separate mind, will, or existence of its own; (2) that domination and control was used to commit fraud or wrong or other dishonest or unjust act, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong."
The holding in Bucyrus was adopted by the Ohio Supreme Court in Belvedere Condominium UnitOwners' Assn. v. Roark (1993), 67 Ohio St.3d 274,288-289. Although the supreme court adopted the three-prong test set forth in Bucyrus, the court made slight alterations in the language in its adaptation, which is the version this court is bound to follow under the principle of stare decisis:
 "The corporate form may be disregarded and individual shareholders held liable for wrongs committed by the corporation when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong." Id. at paragraph three of the syllabus.
The standards articulated in Bucyrus
and Belvedere establish an exception to the general rule that "normally, shareholders, officers, and directors are not liable for the debts of a corporation." Id. at 287. Also, in applying the Belvedere test, the party seeking to impose individual liability on the shareholder retains the burden of proving the existence of facts justifying a piercing of the corporate veil.Univ. Circle Research Ctr. Corp. v. Galbreath Co.
(1995), 106 Ohio App.3d 835, 840.
In regard to appellant's claim concerning the first prong of the Belvedere test, the supreme court stated that "mere control over a corporation is not in itself a sufficient basis for shareholder liability." Belvedere, 67 Ohio St.3d at 289. Instead, "to succeed [on the first prong] a plaintiff must show that the individual and the corporation are fundamentally indistinguishable." Id. at 288. Accordingly, we agree with appellant's statement that a person's ultimate authority over a corporation does not, in itself, meet the first prong.
However, a closer reading of the magistrate's decision reveals that the magistrate found that appellant's ultimate authority over Quality Care permitted her to loan funds from her personal accounts to the business, while also writing payroll checks from her personal accounts, which constitutes an act demonstrating that the corporation actually is an alter-ego. Accordingly, the record shows that the magistrate determined that the first prong was met, not solely because appellant had ultimate authority over the business, but because her actions resulted in Quality Care having no separate legal mind, will, or existence of its own. Indeed, the transcript shows that appellant admitted that she had met Quality Care's payroll obligations by issuing checks from her personal account. Thus, the trial court did not err in holding that the first prong was satisfied. Therefore, appellant's first claim is not well-taken.
In the second claim, appellant states that the few dishonored checks written by Quality Care do not constitute a fraud nor an illegal act, that it occurred when the business was suffering from financial difficulties, that the employees were aware of the situation, and that she did not personally gain from any dishonored checks.
Appellant's second claim is best characterized as challenging the manifest weight of the evidence. In C.E. Morris Co. v. FoleyConstr. Co. (1978), 54 Ohio St.2d 279, syllabus, the court set forth the manifest weight standard to be applied in civil cases:
 "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."
In asserting this claim, appellant fails to mention that the transcript of the magistrate's hearing provides a record of testimony from several employees that checks had been issued and returned for "insufficient funds" and paid a few days later; time checks had been shorted; and that during difficulties with the payroll, appellant made numerous representations that she had plans that would get her out of Quality Care's financial difficulties, and that she was "trying to get [money for] payroll" to pay the employees, but none of those plans actually surfaced. This testimony can be taken to demonstrate that appellant was utilizing Quality Care in a manner in which employees were not properly compensated for their services and intentionally manipulated.
Based on the record as a whole, there is competent, credible evidence for the trial court to have concluded that appellant controlled the corporation in manner to illegally withhold employee compensation on a recurring basis. Thus, appellant's second claim is meritless.
In the third claim, appellant argues that although Quality Care could not meet its payroll and, thus, appellee was not compensated for her work, only the business benefited. The crux of appellant's argument on this issue is that the trial court erred in stating that the third prong was met because she did not benefit from appellee not being paid.
The third prong of the Belvedere test is focused only on a determination of whether the aggrieved party suffered an injury or unjust loss resulting from the other party's control of the business in a wrongful matter. Contrary to appellant's contentions, there is no importance placed upon whether she benefited from the nonpayment. In Wiencek v. Atcole Co., Inc.
(1996), 109 Ohio App.3d 240, 245, the court noted that Belvedere
merely indicated that, providing the other two elements were met, "the corporate veil could be pierced if an injustice would [otherwise] result."
In the case sub judice, an injustice would surely result if appellee was not compensated for her work as an employee of appellant's business. This is especially true when considered with the testimony that appellant, herself, had made numerous representations that payment was forthcoming if appellee only would stay a bit longer. Accordingly, appellant's third claim is not well-founded.
For the foregoing reasons, appellant's assignment of error is without merit and the judgment of the Willoughby Municipal Court is affirmed.
 _______________________________ PRESIDING JUDGE DONALD R. FORD
CHRISTLEY, J., CACIOPPO, J., Ret., Ninth Appellate District, sitting by assignment, concur.
[1] There was no claim or evidence that these personal checks were "loans" authorized by corporate charter or resolution where the result was that the corporation provided reimbursement.