JOURNAL ENTRY and OPINION
Plaintiff-appellant, Freda S. Seavert, appeals from the trial court's entry granting summary judgment in favor of defendants-appellees. For the reasons adduced below, the decision of the trial court is affirmed.
This case results from a previous lawsuit wherein Seavert filed a breach of contract action against Christina Homes, Inc. based on the construction of her new residential home. Defendant-appellee, Dale Ferraro, was the sole shareholder of Christina Homes, Inc. The lawsuit alleged that certain work on the home was not completed or done in a workmanlike manner. The suit further alleged that some subcontractors had to be paid from the remaining balance of the installment loan to remove mechanics' liens on the home. An arbitration panel awarded Seavert over $39,000 in February of 1996. This decision was never appealed and went to judgment. Ferraro claims that Christina Homes, Inc. was financially unable to appeal the decision or pay the judgment.
In April of 1995, Ferraro had formed another corporation defendant-appellee, C M Construction Corp., which was formed primarily for the purpose of commercial construction. Ferraro is also the sole shareholder of this corporation. Ferraro alleges that C M Construction Corp. did not assume the assets or liabilities of Christina Homes, Inc. Both of Ferraro's corporations maintain separate accounting and derive their income from separate sources; i.e., residential home construction verses commercial construction. While both companies remain as viable corporate entities, Christina Homes, Inc. is depleted of assets or steady revenue.
Defendant-appellee, Lakota Enterprises, Inc., is a completely separate legal entity in which Ferraro has no ownership or control. Lakota Enterprises, Inc. and C M Construction Corp. were involved in a joint venture construction project of a new single family home. C M Construction Corp. maintains that throughout its existence it has mainly been involved in commercial construction and this Lakota project was its final venture in single family new home construction.
In an attempt to collect on her previous judgment against Christina Homes Inc., Seavert filed three separate lawsuits against Ferraro, individually, C M Construction Corp., and Lakota Enterprises, Inc.[1] which are the subject of this appeal[2]. All three lawsuits basically alleged that the defendants were liable for the judgment debt of Christina Homes Inc. in one manner or another. The lawsuits involve theories of piercing the corporate veil, successor corporation liability, fraud, and injunctive relief.
The three cases were consolidated and limited discovery took place, including the depositions of Ferraro, individually and as president of C M Construction Corp. and the president of Lakota Enterprises, Inc. A motion for summary judgment was granted as to all defendants. This appeal now follows.
The sole assignment of error states:
 THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANTS-APPELLEES ON ALL THE CLAIMS PRESENTED BY THE PLAINTIFF-APPELLANT IN THE CASES CONSOLIDATED BELOW.
Civ.R. 56 provides that summary judgment may be granted only after the trial court determines: 1) no genuine issues as to any material fact remain to be litigated; 2) the moving party is entitled to judgment as a matter of law; and 3) it appears from the evidence that reasonable minds can come but to one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Norris v. Ohio Std. Oil Co. (1982), 70 Ohio App.2d 1; Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317.
It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. Celotex Corp. v. Catrett (1987), 477 U.S. 317,330; Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, 115. Doubts must be resolved in favor of the nonmoving party. Murphy v.Reynoldsburg (1992), 65 Ohio St.3d 356.
In Dresher v. Burt (1996), 75 Ohio St.3d 280, the Ohio State Supreme Court modified and/or clarified the summary judgment standard as applied in Wing v. Anchor Media, Ltd. of Texas (1991),59 Ohio St.3d 108. Under Dresher, * * * the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact or material element of the nonmoving party's claim. Id. at 296. The nonmoving party has a reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293. The nonmoving party must set forth specific facts by the means listed in Civ.R. 56(C) showing a genuine issue for trial exists.Id.
This court reviews the lower court's granting of summary judgment de novo. Brown v. Scioto Bd. of Commrs. (1993), 87 Ohio App.3d 704. An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ.R. 56(C). The reviewing court evaluates the record * * * in light most favorable to the nonmoving party * * *. [T]he motion must be overruled if reasonable minds could find for the party opposing the motion.Saunders v. McFaul (1990), 71 Ohio App.3d 46, 50; Link v. LeadworksCorp. (1992), 79 Ohio App.3d 735, 741.
As stated above, our review of summary judgment is de novo,
therefore, we will give no deference to the decision of the trial court and shall review the circumstances of the case and the record before us on appeal independently. It must be noted that the evidence and record before this court is limited to the few pleadings filed with the trial court. While there are numerous allegations of factual issues, there is very little actual proof offered in this case to show genuine issues of material fact. Accordingly, our analysis and decisions hinge mostly on questions of law.
Applying the above standard to the claims asserted against Ferraro, individually, all of which were dismissed via summary judgment, clearly shows the trial court properly determined there were no issues of material fact and Ferraro was entitled to judgment as a matter of law. The record indicates that Seavert had previously filed a similar lawsuit against Ferraro, individually, alleging causes of action in fraud, piercing the corporate veil, and failure to perform work in a workmanlike manner. This complaint was filed in 1996 in the same court alleging the same facts and virtually the same claims. The Cuyahoga County Court of Common Pleas judge handling that case dismissed all counts based on Ferraro's motion to dismiss. While Seavert moved the trial court to vacate its judgment, which was denied, no appeal was brought before this court on that action.
The second lawsuit instituted against Ferraro, individually, and now before this court on appeal, was properly dismissed by the trial court via summary judgment based on the doctrine of resjudicata.
The doctrine of res judicata involves both claim preclusion, which historically has been called estoppel by judgment, and issue preclusion, which traditionally has been referred to as collateral estoppel. Grava v. Parkman Twp. (1995), 73 Ohio St.3d 379, 381. Under the claim preclusion branch of res judicata, "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." Id. at syllabus. See, also, Black's Law Dictionary (6th Ed. 1990) 1305 (defining res judicata as a "[r]ule that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action."). Issue preclusion, or collateral estoppel, precludes relitigation of an issue that has been "actually and necessarily litigated and determined in a prior action." Krahn v. Kinney (1989), 43 Ohio St.3d 103, 107.
In Grava, the court stated that the doctrine of res judicata
bars not only subsequent actions involving the same legal theory of recovery as the previous action, but also claims which could have been litigated in the previous action:
 * * * "It has long been the law of Ohio that `an existing final judgment or decree between the parties to litigation is conclusive as to all claims which were or might have been litigated in a first lawsuit'" (quoting Rogers v. Whitehall [1986], 25 Ohio St.3d 67, 69.) Further, the court held "[t]he doctrine of res judicata
requires a plaintiff to present every ground for relief in the first action, or be forever barred from asserting it."
Id.; Grava at 382, quoting Natl. Amusements, Inc. v. Springdale
(1990), 53 Ohio St.3d 60, 62.
Here, Seavert never filed a direct appeal from the trial court's dismissal of her original case against Ferraro, individually. Seavert did not bring an appeal from the trial court's denial of her motion to vacate the judgment, which the trial court properly treated as a Civ.R. 60(B) motion for relief from judgment. However, a Civ.R. 60(B) motion cannot be used as a substitute for appeal. State ex rel. Durkin v. Ungaro (1988),39 Ohio St.3d 191, 192.
There is no dispute Seavert failed to prosecute an appeal from the trial court's denial of her motion to vacate the judgment. Consequently, the judgment in the 1996 complaint against Ferraro, individually, became final and constitutes an absolute bar to a subsequent action involving the same claims, demands or causes of action. Thus, res judicata would act to bar relitigation of Seavert's claims in the Ferraro case which is the subject of this appeal. The trial court properly dismissed the claims against Ferraro.
The complaints at issue against C M Construction Corp. allege that it was a successor corporation to Christina Homes, Inc. and thereby is liable for its judgment owed to Seavert.
Liability for the debts of one corporation do not normally follow through to a successor corporation. See Flaugher v. ConeAutomatic Machine Co. (1987), 30 Ohio St.3d 60. However, liability for a fraudulent transfer of assets from the debtor to a successor corporation will be extended to the successor corporation if the successor (1) expressly or impliedly agrees to assume such liability; (2) the asset transfer is a de facto merger or consolidation; (3) the successor corporation is merely a continuation of the debtor corporation; or (4) the asset transfer was done to escape liability. See Flaugher, supra; WelcoIndustries, Inc. v. Applied Cos. (1993), 67 Ohio St.3d 344; KuempelServ., Inc. v. Zofko (1996), 109 Ohio App.3d 591. If there is competent and credible evidence in the record to support a trial court's finding or an independent finding by an appellate court that a fraudulent transfer occurred, and that corporate-successor liability should be imposed, appellate courts should affirm such findings or impose liability on its own accord. See Seasons CoalCo., Inc. v. Cleveland (1984), 10 Ohio St.3d 77; C.E. Morris Co. v.Foley Constr. Co. (1978), 54 Ohio St.2d 279; Duvall v. Time WarnerEntertainment Co., LP (June 25, 1999), Hamilton App. No. C-980515, unreported.
Because, under the fraudulent-transfer act, successor corporations may be held liable for the debts of the original corporation, the question arises as to what, if any, liability may be imposed upon the officers, directors, and shareholders of the successor corporation. Corporations are formed in order to facilitate business transactions and to shield officers, directors, and shareholders from personal liability for torts or breaches of contract committed by the corporations. See Bucyrus-Erie Co. v.General Products Corp. (C.A.6, 1981), 643 F.2d 413; BelvedereCondominium Unit Owners' Assn. v. R.E. Roark Cos., Inc. (1993),67 Ohio St.3d 274, (citing State ex rel. Atty. Gen. v. Standard OilCo. [1892], 49 Ohio St. 137, paragraph one of the syllabus). That corporate veil, or shield from liability, may be pierced or disregarded and individual shareholders held liable for wrongs committed by the corporation when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong. Belvedere, supra, at paragraph three of the syllabus.
There is no precise test to determine whether the elements required to pierce the corporate veil have been satisfied, and each case should be "regarded as `sui generis' and decidable on its own facts. Bucyrus-Erie Co., supra, at 418. Upon review of a trial court's decision to pierce the corporate veil, we will affirm the judgment of the trial court if there is competent and credible evidence to support the trial court's conclusion that the officers, directors, or shareholders should be held personally liable for the debts of their corporation. See C.E. Morris Co., supra; KuempelServ., Inc., supra, at 598.
Under the foregoing framework, the record is void of any evidence or other proof that would convince this court that the trial court erred in granting summary judgment on these issues. Seavert makes numerous broad brush allegations of a fraudulent formation of a new corporation to avoid liability and fraudulent transfers of corporate assets. The undisputed facts in this case speaks volumes to thwart Seavert's allegations.
First and foremost, C M Construction Corp. was formed almost one year prior to the judgment in the Christina Homes, Inc. case. It would take a quantum leap of logic to assume Ferraro formed this new entity as means to avoid liability in an action not even close to resolution. Further, the second construction company has a different business purpose in that it is primarily operating to pursue commercial construction. The primary business of Christina Homes, Inc. was single-family new home construction. Seavert's argument that C M Construction Corp. engaged in some single-family construction is not persuasive nor does it rise to the level of a genuine issue of material fact.
Lastly, the record is abundantly clear that Christina Homes, Inc. barely eked out a profit for the few years it actively constructed homes. There is no dispute that Ferraro operated this business from his home and that there were no true assets the company actually owned. Seavert's offer of proof that it is likely that Ferraro transferred cash from one entity to another is insufficient to create a genuine issue of material fact. The reality of the situation is that Christina Homes, Inc. had no assets to transfer.
Clearly, none of the factors establishing successor liability were met here. Seavert offered nothing more than mere allegations in her attempt to defeat the summary judgment motion. The fact remains that Seavert has a valid judgment against Christina Homes, Inc. and is entitled to pursue collection on that judgment againstthat entity by all means necessary. (Emphasis added.) Repeated lawsuits gainst Ferraro, individually, and against his other construction company absent proof of fraud or other elements of successor liability are totally unfounded and properly dismissed by the trial court.
The third complaint filed by Seavert and, subsequently consolidated, seeks injunctive relief against Ferraro, C M Construction Corp., and Lakota Enterprises Inc.[3] Seavert does not argue any particular error with regard to this cause of action even though her assignment of error claims the trial court improperly granted summary judgment in all the consolidated cases. Seavert provides no argument, analysis, reasoning, or explanation in her appellate brief on this matter.
Seavert states in the conclusion of her appellate brief that defendants-appellees are not entitled to summary judgment against any of the claims other than those for injunctive relief (Case No. 359720) * * *. While it would seem Seavert was conceding this argument, in the very next sentence she requests that this court reverse the trial court's journal entry on Case No. 359720.
An appellate court is empowered to disregard an assignment of error presented for review due to lack of briefing by the party presenting that assignment. State v. Watson (1998), 126 Ohio Accordingly, any proceeds or assets from a joint venture between Lakota Enterprises Inc. and C M Construction Corp. could not be attached to satisfy Seavert's judgment against Christina Homes, Inc. App.3d 316, 321-322, discretionary appeal disallowed in (1998),82 Ohio St.3d 1413. Proper appellate briefing standards are set forth in App.R. 16(A). This assignment is deemed to be improperly briefed, and hence disregarded, due to the complete lack of argument containing reasons in support of the contention and citations to authority. See App.R. 16(A)(7).
The assignment of error and all arguments derived therefrom having been considered and ruled upon, the judgment of the trial court is affirmed.
It is ordered that appellees recover of appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ___________________________ MICHAEL J. CORRIGAN, JUDGE
 ROCCO, P.J., and PORTER, J., CONCUR.
[1] In April of 1998, the first lawsuit was filed as a creditor's bill and named Ferraro, C M Construction Corp., and Lakota Enterprises Inc. as defendants. In May of 1998, the second lawsuit was filed as a complaint for money damages and named Ferraro and C M Construction Corp. as defendants. In July of 1998, the third lawsuit was filed as a complaint for injunctive relief which again named all three entities as defendants.
[2] In 1996, Seavert sued Ferraro individually which case was dismissed and the implications of such are discussed later in this brief.
[3] While Lakota Enterprises Inc. was a named defendant in two of the three actions now before this court on appeal, the claims against it in the creditor's bill are rendered moot by our decision that successor liability is inapplicable in this case.